UNITED STATES, Appellee,

v.

Juan C. CORDERO, Specialist Four, U.S. Army, Appellant.

No. 37,388.
CM 437407.

U. S. Court of Military Appeals.

June 22, 1981.

For Appellant: *Captain Charles E. Trant* (argued); *Captain Kevin E. O'Brien* (on brief); *Colonel Edward S. Adamkewicz, Jr., Lieutenant Colonel John F. Lymburner, Major Elliot J. Clark, Jr., Major Benjamin A. Sims* and *Major D. David Hostler.*

For Appellee: *Captain Michael C. Chapman* (argued); *Colonel R. R. Boller, Major Robert B. Williams, Captain Charles A. Cosgrove* (on brief); *Colonel Thomas H. Davis, Major Ted B. Borek, Major Michael B. Kennett, Major David McNeill, Jr., Captain Paul G. Thomson* and *Captain Brian X. Bush.*

*Opinion*

FLETCHER, Judge:

The appellant was found guilty of wrongful possession of marihuana and its wrongful introduction onto a military base for sale and transfer, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. A general court-martial sentenced him to a dishonorable discharge, confinement at hard labor for 2 years, and reduction to the pay grade of E–1. The convening authority and the United States Army Court of Military Review approved the findings and sentence.

The issue before this Court for review [1] is whether:

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT BY FAILING TO SUPPRESS EVIDENCE OBTAINED AS A RESULT OF THE SEARCH AND SEIZURE OF THE AUTOMOBILE IN WHICH THE APPELLANT WAS A PASSENGER.

At a pretrial motion hearing two government witnesses, Captain Duncan and Agent Campbell, offered the following uncontroverted testimony. Captain Billy Duncan was Company Commander of Headquarters and Headquarters Company, 1st Battalion, 36th Infantry, stationed in Friedburg, Germany. In the late afternoon of March 2, 1978, he was approached by one of his platoon sergeants. This sergeant stated that he knew a soldier who had information concerning a probable large drug purchase in Frankfurt that night. Captain Duncan, new in command, was unfamiliar with the individual who was the ultimate source of this information. He talked with the platoon sergeant concerning the latter's opinion of this individual as a soldier and his general reliability. Satisfied with what he heard, Captain Duncan requested that this informant be brought to him to personally relate his story. The platoon sergeant left Captain Duncan and returned a short time later with this unnamed individual.

This individual proceeded to inform Captain Duncan of various conversations that he had heard that day in the barracks between Pringle, Stiles, and other soldiers. He said Pringle and Stiles were trying to borrow a car from another soldier in the company to go to Frankfurt to make a "buy." However, the owner of the car for some unexplained reason had refused to lend them the vehicle. The informant further stated that the plans of Pringle and Stiles to go to Frankfurt were known by other people in the barracks.

At this point, Captain Duncan decided to arrange for Pringle and Stiles to be loaned the car. He ordered the platoon sergeant to notify the owner of the car that he should lend these soldiers his vehicle so as

---

1. A second issue was granted for review in this case. 7 M.J. 249 (1979). It involved the question of whether a laboratory report was admissible against the appellant to establish the identity of the charged substance. This issue was decided contrary to the appellant's position in the subsequent case of *United States v. Strangstalien,* 7 M.J. 225 (C.M.A.1979), and need not detain us further.

to facilitate the drug buy. This was accomplished.

The informant in the meantime had left Captain Duncan to go to the barracks. A few hours later he returned to Captain Duncan and said that Pringle, Stiles and a third unnamed individual had departed in a car after its owner Norshed had relented and finally let them borrow it. The vehicle was a green Volkswagen with a "CB" antenna and an identifiable bumper sticker. During this time, Captain Duncan, along with Captain Huffman, the appellant's company commander, contacted Captain McKay of the Legal Office and Mr. Hicks of the Criminal Investigation Division (CID), for assistance. The informant shortly thereafter related his story to a CID agent named Campbell and other officials. In addition, at the direction of Captain Duncan, the informant, though incriminating himself, prepared and signed a written statement which recounted past drug activities in the battalion involving these individuals and others. Captain Duncan at that point authorized Agent Campbell to arrest the individuals in the car from his unit and search the vehicle on its return to the base. Captain Huffman, the appellant's company commander, authorized Agent Campbell to arrest anyone from his unit in the vehicle. Agent Campbell testified that at that moment he had probable cause on his part to authorize the arrest of people in the green Volkswagen when they returned to the base. He gathered up two military policemen, went to the base gate, and awaited the return of the suspect vehicle.

Sometime around 1:00 a. m. on March 3, 1978, Norshed's green Volkswagen was stopped at the base gate by unit a policeman for an ID check in accordance with Agent Campbell's instructions. Agent Campbell himself approached the vehicle and identified himself as a CID agent. He told the driver to turn off the car's engine. Agent Campbell also instructed all the people in the vehicle to put their hands in front of their person: the driver's hands on the steering wheel, the front passenger's hands on the dashboard and the rear passenger's hands on the back of the driver's seat. He then opened the door of the vehicle, removed the keys from the ignition, and placed them in his pocket.

Agent Campbell then turned his attention specifically to the driver of the car. He told the driver, Stiles, to get slowly out of the car for purposes of a weapons search. The driver instead of removing himself in the normal fashion from the vehicle, backed out of the vehicle. He blocked the agent's view and made suspicious tugging movements in his jacket. The agent grabbed the driver by the jacket and the driver removed himself from the vehicle and assumed the search position. The agent spotted a plastic bag on the driver's seat. He then conducted a pat-down search of the driver's body for weapons and removed a buck knife from a sheath on the driver's belt. Agent Campbell then had one of the military policemen handcuff the driver and take him to the side of the road. He then picked up the plastic bag and opened it. He saw what appeared to be a large brick of hashish in a cloth bag; he testified such bricks are normally packaged in this manner. This material was not the subject of appellant's criminal conviction. Agent Campbell then searched the area under the driver's seat.

Agent Campbell next proceeded to the passenger's side of the vehicle. He instructed Pringle, in the front seat, to get out of the car. Pringle complied and the agent placed him in the search position. A search of Pringle's person produced a smoking device and a cloth bag. Pringle was then placed in handirons and escorted to the side of the road by a military policeman. Agent Campbell reentered the vehicle and searched under the front passenger seat where Pringle had been sitting. He felt a plastic bag with a large item in it and tried to pull it out from under the front of the passenger seat. He could not, so he reached behind the front passenger seat and removed this second plastic bag. The agent opened the bag and observed what he suspected to be a large quantity of hashish. This substance was the subject of the charges for which the appellant was convicted and was introduced against him at trial.

The agent was not yet finished, for the appellant Cordero remained in the back seat of the vehicle. Agent Campbell went again to the driver's side of the vehicle and instructed appellant to get out of the car. After doing so, he was placed in the search position and searched but nothing was found.

The appellant's civilian defense counsel made a motion to suppress any government evidence produced as a result of the above described searches and seizures. The basis of his motion was that such government actions were unlawful because they were not based on probable cause. After hearing, the military judge denied this motion. He ruled that no evidence was produced as a result of a search of the appellant or any place where the appellant had standing to object. The Army Court of Military Review found the military judge erred in his ruling that the appellant lacked standing to object to these searches and seizure.[2] Nonetheless, it affirmed the conviction because it found that the government's actions were based on probable cause and a lawful search authorization. In addition, the lower Court found it unnecessary to determine whether the seizure of the plastic bag and its immediate search were proper as incident to a lawful arrest.

We initially observe that the Manual for Courts-Martial, United States 1969 (Revised edition), in paragraph 152 provides that:

When the accused objects to evidence obtained as a result of a search on the ground that the search was unlawful, the burden is on the Government to show, as an interlocutory matter, either that the search was lawful or that for some other reason the search would not render the evidence in question inadmissible against the accused.

In *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980), however, the Supreme Court said that it is the accused who has "the burden" to show searches and seizures are "illegal" and "that he had a legitimate expectation of privacy in" the areas searched. *See Rakas v. Illinois*, 439 U.S. 128, 131 n.1, 99 S.Ct. 421, 424 n.1, 58 L.Ed.2d 387 (1978). Despite this apparent procedural difference, it is clear as a matter of military law that the admission of the challenged evidence will be upheld if the Government established the searches and seizures were lawful. With this in mind, we turn to the particular holding of the Army Court of Military Review that the government actions in the present case were the product of a lawful search authorization.

■ Contrary to the holding of the Court of Military Review, we find that Captain Duncan was disqualified to issue the authorization for the search of this automobile. *See generally United States v. Ezell*, 6 M.J. 307, 318–319 (C.M.A.1979). On his own initiative Captain Duncan personally directed the investigation, arrest and search of Pringle and Stiles after his initial briefing by his platoon sergeant. *United States v. Guerette*, 23 U.S.C.M.A. 281, 283, 49 C.M.R. 530, 532 (1975). Moreover, by arranging

2. It is unnecessary to determine in this case whether the military judge or the Court of Military Review was correct on the question of the appellant's automatic standing to challenge these searches and seizures. *See United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed. 619 (1980). Moreover, since the appellant's trial in May 1978, the Supreme Court has abandoned a standing approach to these Fourth Amendment issues and required instead that a petitioner demonstrate that he had a legitimate "expectation of privacy in the area searched" as well as the property seized. *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 2560–62, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

At the present time, the pertinent inquiry would be whether the appellant had a reasonable expectation of privacy in the area underneath the automobile seat and in the plastic bag contained therein. *See Rawlings v. Kentucky, supra*; *see also United States v. Benson*, 631 F.2d 1336 (8th Cir. 1980); *United States v. Ross*, 27 Cr.L. 2169, 655 F.2d 1159 (D.C. Cir. Apr. 17, 1980). At the hearing on the motion, the government's evidence indicated that the automobile was loaned to the three individuals. After denial of the motion, the appellant testified at trial on the merits that the automobile had been loaned to Stiles alone and the plastic bag and its contents were also the latter's property. *See United States v. Portillo*, 633 F.2d 1313, 1315–17 (9th Cir. 1980).

the loan of the automobile, he designed and carried out a plan which led to the execution of the actual crime. *United States v. Staggs*, 23 U.S.C.M.A. 111, 114, 48 C.M.R. 672, 675 (1974). Finally, Captain Duncan condoned the use of the informant and permitted him to continue his operations. *United States v. Ezell, supra*, at 319, 324–25. *See United States v. Rivera*, 10 M.J. 55, 58 (C.M.A.1980). This is police activity pure and simple. Accordingly, these searches and seizures were not based on a valid search authorization.

■ The next question to be resolved by this Court is whether the seizure and immediate search of the plastic bag without a valid search authorization was constitutionally permitted as a search incident to a lawful arrest. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *United States v. Wenzel*, 7 M.J. 95 (C.M.A.1979); *United States v. Kinane*, 1 M.J. 309, 313 n. 7 (C.M.A.1976). Four issues must be addressed in answering this question. First, was there probable cause for Agent Campbell to stop Norshed's vehicle and place its occupants under arrest? Second, were the appellant and his companions in the status of arrest at the time of the challenged searches and seizures? Third, at the time of the search under Pringle's seat, was this area within the immediate control of the appellant or his companions? Fourth, at the time of the search of the plastic bag, was this container still within the immediate control of the appellant or his companions? The Government has the burden to justify searches and seizures based on the arrest exception to the warrant requirement. *Arkansas v. Sanders*, 442 U.S. 753, 760, 99 S.Ct. 2586, 2591, 61 L.Ed.2d 235 (1979).

■ This first issue need give us little pause. No doubt exists that Agent Campbell, as well as Captain Duncan and Captain Huffman, had ample probable cause to stop Norshed's vehicle and arrest its three occupants as suspected drug possessors and traffickers. *See* Articles 7(b) and 9(a), UCMJ, 10 U.S.C. §§ 807(b) and 809(a). *See generally United States v. Wilson*, 6 M.J. 214, 215

(C.M.A.1979). Simply stated, the record shows, as the Court of Military Review found, that the arresting officers had a sufficient basis for concluding this unnamed informant was credible and his information was reliable with respect to these three suspects' criminal activity. *See Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).

More particularly, this informant, though at the time of the motion he was unnamed in the record of trial, was known by the arresting officers as a soldier in Captain Duncan's unit. *Cf. Recznik v. City of Lorain*, 393 U.S. 166, 169, 89 S.Ct. 342, 344, 21 L.Ed.2d 317 (1968). A platoon sergeant who knew the informant described this soldier's duty performance and vouched for this informant's personal reliability. *See United States v. Harris*, 403 U.S. 573, 600, 91 S.Ct. 2075, 2090, 29 L.Ed.2d 723 (1971) (Harlan, J., dissenting). Finally, the informant signed a written statement in which he incriminated himself in past drug activities in the battalion. *United States v. Harris, supra* at 583, 91 S.Ct. at 2081–82. Under such circumstances, the arresting officers had good reason to believe this informant was credible.

There also was a basis in the record of trial for concluding the present information provided by the informant was reliable as to these three suspects. *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964). The informant submitted to repeated questioning as to the details of his information and the method of its acquisition. *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Moreover, he established his access to Pringle's and Stiles' drug activities at the expense of his own self-incrimination. Furthermore, he stated to the arresting officers that he personally overheard conversations between Pringle, Stiles and others as to the drug trafficking plans for that evening. *Cf. Spinelli v. United States, supra; Aguilar v. Texas, supra*. Likewise, the reports were recent and partially verified by the subsequent conduct of the three suspects in borrowing the vehicle. Probable cause ex-

isted to arrest the occupants of this vehicle for suspected drug offenses.

The next issue to be decided in this case is whether the appellant and his companions were in a state of arrest prior to or contemporaneously with the challenged searches and seizures. *Chimel v. California, supra. See generally Cupp v. Murphy*, 412 U.S. 291, 294, 93 S.Ct. 2000, 2003, 36 L.Ed.2d 900 (1973); *United States v. Kinane, supra* at 315 n.16. Article 9(a), *supra*, defines arrest within the military justice system for purposes of the *Chimel* doctrine, as follows: A military "[a]rrest is the restraint of a person by an order . . . directing [such person] to remain within certain specified limits." *See* Article 7, UCMJ; para. 19c, Manual, *supra*. Whether this status occurred in the present case at the time of the challenged searches and seizures "is primarily [a question] of fact to be [determined] by the factfinders." *United States v. Kinane, supra* at 314.

■ The Army Court of Military Review indicated in its opinion that "the three occupants were apprehended and marihuana was found in the automobile." Appellate defense counsel asserts that Cordero had not yet been arrested when the marihuana was found because at that time he was not formally notified by the agent of his arrest or patted down for weapons.

Counsel has misread our opinion in *United States v. Kinane, supra*, which in its own right established no such exclusive requirements for a custodial arrest. On the contrary, it stated that the statutorily required order of arrest may be directed by word of mouth, by writing or by the circumstances surrounding the arrest. *Id.* Here the CID agent had the vehicle stopped, identified himself to its occupants,[3] ordered the engine turned off, and seized the keys from the automobile. *See Henry v. United States*, 361 U.S. 98, 103, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959). Moreover, he commanded each person in the vehicle to keep his hands in plain view on a particular part of its interior. At this point, the appellant and his companions had no individual freedom of movement outside the directed restraints. *Terry v. Ohio*, 392 U.S. 1, 26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889 (1968).[4] Under these circumstances, they were then under the order of arrest as delineated in Articles 7 and 9 of the Code and as required for the purposes of the *Chimel* doctrine.

Immediately thereafter, the government agent proceeded to execute additional mechanics of arrest necessary to transport these suspects to appropriate military police facilities. One at a time, he removed each suspect from the vehicle, searched his person, handcuffed and transferred him to the control of a military policeman and finally searched underneath his seat. Admittedly the appellant, unlike Stiles and Pringle, had not been searched and handcuffed prior to the discovery of the marihuana under Pringle's seat. Yet such additional and more severe deprivations of liberty do not change the character of the initial custodial restraints placed on the three suspects which were sufficient to invoke the *Chimel* doctrine. The lawful arrests of all three suspects in this case were accomplished prior to the discovery of any marihuana in Norshed's vehicle.

■ The third question to be answered is whether Agent Campbell could search underneath the passenger seat and seize the plastic bag, incident to the arrest of the appellant and his two companions. *Chimel v. California, supra.* A prompt warrantless search incident to an arrest is constitutional to the extent that its scope is limited to "a search of the arrestee's person and the area 'within his immediate control,' [that is,] . . .

---

3. The government witness Stiles later testified at trial that Agent Campbell approached the vehicle with his gun. This testimony was given at trial after the military judge first ruled on the suppression motion. Nevertheless, appellate courts, in reviewing the correctness of this ruling, may consider any evidence presented in the trial of the case. *Carroll v. United States*,

267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925); *see generally* Wright, Federal Practice and Procedure: Criminal § 678.

4. Though the cited case primarily deals with the "stop and frisk" situation, it also defines the status of arrest pertinent to our discussion.

the area from within which he might gain possession of a weapon or destructible evidence." *Id.* 395 U.S. at 763, 89 S.Ct. at 2040. Due to "[t]he potential dangers lurking in all custodial arrests," these searches are considered "reasonable without requiring the arresting officer to calculate the probability that weapons or destructible evidence may [actually] be involved. *United States v. Robinson*, 414 U.S. 218, 234–35 [94 S.Ct. 467, 476, 38 L.Ed.2d 427] (1973)." *United States v. Chadwick*, 433 U.S. 1, 14–15, 97 S.Ct. 2476, 2485, 53 L.Ed.2d 538, (1977). Here, prior to this challenged search and seizure, the appellant, who was still in the back seat of the vehicle, could reach underneath the passenger seat and have immediate access to anything that might be there. The search under the seat was not "remote in time or place from the arrest." *Cf. Preston v. United States*, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964). Accordingly, under the aforementioned precedents, it was entirely reasonable that Agent Campbell search this area and seize the plastic bag incident to the appellant's arrest.[5]

■ The final question raised is whether it was proper for Agent Campbell to immediately inspect the contents of this plastic bag which he had just lawfully seized from under Pringle's seat. *Arkansas v. Sanders, supra,* 442 U.S. at 762, 765 n.14, 99 S.Ct. at 2592, 2594 n.14. *See generally* 2 LaFave Search and Seizure § 5.5 (1978). Appellate defense counsel argues that once Agent Campbell seized this container no exigency of mobility existed which would justify its search without a proper authorization. *See Arkansas v. Sanders, supra,* 442 U.S. at 763, 99 S.Ct. at 2593; *United States v. Chadwick, supra,* 433 U.S. at 13, 97 S.Ct. at 2484. We do not find this argument persuasive under the circumstances of appellant's case.

It is clear that immediately prior to the search of the bag by Agent Campbell, the appellant and his cohorts had little chance of moving the car or the plastic bag before a search authorization was secured. Agent Campbell had the keys to the car. Stiles and Pringle were in handcuffs and under police escort at the side of the road away from the vehicle. The appellant was in the back seat of the car with his hands on the seat in front of him. The plastic bag was immobilized in this sense.

Nevertheless, the absence of any exigency of mobility does not always require that a lawfully seized container be searched only after the later acquisition of a valid search authorization. *See Arkansas v. Sanders, supra* 442 U.S. at 763–64 n.11, 99 S.Ct. at 2593 n.11. The plastic bag may be searched immediately without a warrant if it is still within the immediate control of the arrestee at the time of the search. *Chimel v. California, supra.* Such a warrantless search is permitted to protect the police officer and preserve evidence of the crime. *See generally United States v. Robinson, supra.* Of course, this doctrine is not without limitations. In *United States v. Chadwick, supra* 433 U.S. at 15, 97 S.Ct. at 2485 (footnote omitted), the Supreme Court said:

> [W]arrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the "search is remote in time or place from the arrest," *Preston v. United States*, 376 U.S. at 367, [84 S.Ct. at 883] or no exigency exists. Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy

---

5. The space underneath the passenger seat must obviously be considered an integral part of this automobile. *See Arkansas v. Sanders,* 442 U.S. 753, 763, 99 S.Ct. at 2586, 2593, 61 L.Ed.2d 235 (1979). As indicated above, Agent Campbell had ample probable cause to stop the vehicle and seize its suspected contraband. *Id.* at 760, 99 S.Ct. at 2591. Accordingly, a war-

rantless search of this part of the vehicle might also be permitted by the Supreme Court decision in *Chambers v. Maroney,* 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970), and the so-called automobile exception to the warrant requirement. *See Carroll v. United States, supra.*

evidence, a search of that property is no longer an incident of the arrest.

We believe that this plastic bag was properly searched by Agent Campbell without a warrant under this doctrine.

A critical factor in reaching this decision is that Agent Campbell was still in the process of placing the three men in custody when he inspected the contents of the plastic bag. At the time of the discovery of the plastic bag, he immediately searched the bag in or near the vehicle just a few feet from the appellant. Such a search again was not "remote in time or place from the arrest." Cf. *United States v. Chadwick, supra* 433 U.S. at 15, 97 S.Ct. at 2485. Moreover, at the time of the search this plastic bag was not in the exclusive or safe control of Agent Campbell. The appellant was close by and unrestrained. He still had to be removed from the vehicle, searched and handcuffed. A weapon had just been found on one of appellant's companions who also attempted to hide some other contraband. Under these circumstances there was still danger that the appellant might gain access to the plastic bag to seize a weapon or destroy evidence. *United States v. Portillo*, 633 F.2d 1313, 1320 (9th Cir. 1980). Cf. *United States v. Chadwick, supra.* In such a situation we are not inclined to enter into the speculative review of the "quick ad hoc judgment" of a police officer. *United States v. Robinson, supra* 414 U.S. at 234–36, 94 S.Ct. at 476–77. The immediate search of the plastic bag incident to the arrest of the appellant was lawful. *See Draper v. United States, supra.*

The decision of the United States Army Court of Military Review is affirmed.

EVERETT, Chief Judge (concurring):

I concur with the principal opinion that (a) Captain Duncan's extensive involvement in the investigation disqualified him to serve as a neutral and detached magistrate

for purposes of authorizing a search or a seizure and (b) there was a lawful search incident to apprehension of appellant.[1] I find nothing in the principal opinion which is at odds with the sound observation of Judge Cook that disqualification of Captain Duncan would not require a disqualification of Captain Huffman, who had not participated in the investigation.

In my view the search here could also be upheld as a permissible warrantless search of an automobile pursuant to *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), and *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

COOK, Judge (concurring in the result):

I disagree with parts of the principal opinion and have reservations about other portions of it. My crucial disagreement is with its disregard of the authorization issued by Captain Huffman, the accused's commander.

Neither before nor after issuance of his authorization did Captain Huffman engage in any conduct or take any action that disqualified him as a neutral and detached magistrate. He issued his authorization on the basis of evidence that was, in my opinion, indisputably sufficient to establish probable cause for the apprehension he authorized. In my judgment, Captain Huffman's unimpeachable authorization was not rendered invalid or superceded by the concurrent authorization obtained from Captain Duncan. Consequently, if Captain Duncan was disqualified to authorize a search and seizure, his disqualification did not taint Captain Huffman's authorization. As the accused was properly apprehended under Captain Huffman's authorization, a search of the area immediately at the situs of the apprehension was allowable. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). I, therefore, join in affirming the decision of the Court of Military Review.

---

1. In discussing the appellant's apprehension and the search incident thereto, the principal opinion seems to blur the distinction between "apprehension" under Article 7 of the Uniform Code of Military Justice, 10 U.S.C. § 807, and "arrest" under Article 9 of the Code, 10 U.S.C. § 809. The latter is a unique term of art in military law, while the former is the military counterpart to civilian "arrest".