UNITED STATES, Appellee,

v.

Ernest L. SANFORD, Sergeant U.S. Army, Appellant.

No. 39,560.

SPCM 14352.

U. S. Court of Military Appeals.

Dec. 14, 1981.

For Appellant: *Captain Gary D. Gray* (argued); *Colonel Edward S. Adamkewicz, Jr., Lieutenant Colonel John F. Lymburner, Major Robert D. Ganstine, Major Alan W. Schon* (on brief); *Major Lawrence H. Galehouse, Major James F. Nagle, Captain Robert M. Twiss, Captain John Lukjanowicz.*

For Appellee: *Captain Kenneth H. Clevenger* (argued); *Colonel R. R. Boller, Major Douglas P. Franklin* (on brief); *Major Ted B. Borek.*

Opinion of the Court

FLETCHER, Judge:

Appellant was tried by special court-martial before a military judge alone. Contrary to his pleas, he was convicted of possession, sale and transfer of marihuana, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. He was sentenced to a bad-conduct discharge, confinement at hard labor for 65 days and reduction to the pay grade E–1. The convening authority approved this sentence and the Army Court of Military Review affirmed this action.

The following issue was granted review (10 M.J. 94) by this Court:

APPELLANT WAS DENIED HIS RIGHT UNDER THE FOURTH AMENDMENT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES IN THAT THE EVIDENCE AGAINST HIM WAS SEIZED DURING A SEARCH OF HIS PROPERTY WHICH WAS NOT AUTHORIZED BY A NEUTRAL AND DETACHED MAGISTRATE, WAS NOT INCIDENT TO A LAWFUL APPREHENSION, WAS NOT JUSTIFIED BY EXIGENT CIRCUMSTANCES, AND TO WHICH APPELLANT HAD NOT CONSENTED.

In addressing this question, we note that paragraph 152, Manual for Courts-Martial, United States, 1969 (Revised edition), states in part (emphasis added):

When the accused objects to evidence obtained as a result of a search on the ground that the search was unlawful, the burden is on the Government to show, as an interlocutory matter, either that the search was lawful or *that for some other reason the search would not render the evidence in question inadmissible against the accused.*

We hold that the Government met this burden in the present case.

The pertinent facts critical to this decision are uncontroverted in the record of trial. Around 4:30 p. m. on April 2, 1979, Sergeant First Class David Lander was standing at a window on the third floor of his unit's barracks in Giessen, Federal Republic of Germany. This window was approximately 60 feet from the ground. From this vantage point, he noticed two soldiers standing together about 15 or 20 feet from the side of the building. He

observed one soldier reach into his field jacket and pull out a brown container. He further observed this soldier remove a silver oblong package from this container. At the same time, he observed the second soldier quickly reach into his back pocket, take out his wallet and remove some green paper which appeared to be currency of some type. He watched as the two soldiers exchanged the silver package for the green paper and then departed in different directions.

Sergeant Lander could not identify either of these soldiers by name but he suspected a drug transaction had taken place. He immediately went to the battery commander's office and briefly reported to the acting battery commander, Lieutenant Young, that he thought that he had just seen a drug transaction—a drug buy involving a brown container.[1] At that time, Sergeant Lander and Lieutenant Young were by a window overlooking the parade field. Sergeant Lander recognized appellant, who was with a group of soldiers on this field, as the soldier who had possession of the brown container and Lieutenant Young identified him as Sergeant Sanford. Lieutenant Young told Sergeant Lander to bring appellant to his office, adding, "Just tell him I would like to see him.... Don't tell him why."

Sergeant Lander proceeded to the parade field to find appellant. Since appellant was no longer there, Sergeant Lander began to look around and went to the post exchange. There he saw appellant. He approached appellant and said, "Lieutenant Young wants to see you." Appellant responded, "Okay," and walked to the battery area with Sergeant Lander, about a step or two behind him.

Appellant and Sergeant Lander entered the battery area and walked up the stairs to the third floor. As they entered the third floor, Sergeant Lander observed that appellant had a leather pouch in his hand. He watched as appellant "walked up to" a soldier named Owens "and slapped" this leather pouch into Owens' stomach and said "hold this for me." Appellant then took off down the hall.

Sergeant Lander then approached Owens and demanded that Owens give him what the latter had just received from appellant. After some resistance from Owens and a threat that he would have to come to the battery commander's office, Owens surrendered the brown leather pouch to Sergeant Lander. Sergeant Lander then proceeded to Lieutenant Young's office.

For some reason not apparent on the record, Sergeant Lander arrived at Lieutenant Young's office before appellant. He had the brown pouch closed up in his hat and placed the hat on a table. He did not at that time inform Lieutenant Young concerning his possession of the leather pouch. Appellant then entered the room. Lieutenant Young informed appellant that he was under apprehension.[2] He then asked appellant if he could search his person. Appellant initially refused but then consented. During this search Sergeant Lander pointed to the small envelope on the desk and informed Lieutenant Young how he acquired it. Lieutenant Young asked appellant whether the pouch was his, but appellant denied being its owner.

Lieutenant Young then opened the brown leather pouch and saw several tin foil packets. He opened one of the foil packets and saw a greenish brown chunk of unknown substance.[3] Prosecution exhibit 1, "containing a brown leather pouch, and several

---

1. Lieutenant Young testified that Sergeant Lander mentioned a brown leather envelope. Sergeant Lander stated on cross-examination that he could not recall telling Lieutenant Young about the size, shape or color of the pouch or package he observed.

2. The military judge ruled that the apprehension of appellant by Lieutenant Young at this time was unlawful because insufficient infor-

mation concerning the existence of probable cause had been communicated to him. *See United States v. Cordero*, 11 M.J. 210, 214–15 (C.M.A.1981).

3. The military judge ruled that Lieutenant Young had probable cause to arrest appellant at this point and his arrest was lawful from this point on.

pieces of partially unwrapped foil-wrapped greenish-brown matter" was identified by Lieutenant Young and Sergeant Lander as these same materials. Prosecution exhibit 4 was a confession to the sale of marihuana subsequently obtained from appellant. Prosecution exhibit 5 was a laboratory report showing the greenish-brown matter was marihuana. Defense counsel at trial vigorously objected to the introduction of this evidence as the product of or tainted by an unlawful search and seizure. The military judge denied the motion and admitted this evidence.

■ The first issue to be addressed on this appeal is whether the initial conduct of Sergeant Lander in observing appellant from the barracks window violated the fourth amendment. *See* 1 W. LaFave, *Search and Seizure* §§ 2.2(a), 2.4(a) (1978). The record indicates that Sergeant Lander inadvertently observed the activities of appellant and a fellow soldier in a public area and from a vantage point where he had every right to be. These observations were lawful without any necessity for preexisting probable cause. *See* para. 152, Manual, *supra*.

The next problem in this case concerns the actions of Sergeant Lander after he reported his observations to Lieutenant Young and responded to the latter's order to bring appellant to the battery commander's office. Sergeant Lander approached appellant in the post exchange, informed him that "Lieutenant Young wants to see you," and followed him to the battery commander's office. In response to this government action, appellant walked to the battery commander's office and, encountering Owens, displayed a leather pouch and transferred it to Owens from whom it was eventually seized by Sergeant Landers. This record establishes a close causal connection between Sergeant Lander's actions and the public display and transfer of the pouch by appellant. *See Dunaway v. New*

*York,* 442 U.S. 200, 216–18, 99 S.Ct. 2248, 2258–59, 60 L.Ed.2d 824 (1979).

■ If Sergeant Lander's conduct is characterized as an arrest (*Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)), or detention for custodial interrogation (*Dunaway v. New York, supra*), it must be supported by probable cause. If this conduct, so categorized, was not supported by probable cause, it was unlawful. U.S. Const.Amend. IV. Any evidence seized as a result of the exploitation of such unlawful conduct is tainted and inadmissible in appellant's court-martial. *See Dunaway v. New York, supra* at 216–19, 99 S.Ct. at 2258–59. On the other hand, if it is not characterized as indicated above or as the lesser intrusion spoken of in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), objective justification is not required and the evidence is not tainted. *See United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1981) (opinion announcing the judgment).

In *United States v. Mendenhall, supra* at 553, 100 S.Ct. at 1876–77, Justice Stewart stated, concerning the fourth amendment, that "a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." In untempered light, Sergeant Lander's initial communication of Lieutenant Young's order to appellant and his subsequent following of appellant to the battery commander's office might readily be construed as a seizure. However, this show of authority occurred within the context of the military and its daily operations. *See Brown v. Glines,* 444 U.S. 348, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980); *Parker v. Levy,* 417 U.S. 733, 758 (1974). A service member is simply not free to ignore the lawful commands of his superiors. Article 92, UCMJ, 10 U.S.C. § 892. In view of this reality of military life, a service member could not reasonably [4] conclude that such action alone

---

4. *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), is an opinion where only Justices Stewart and Rehnquist expressly adopted the objective-circumstance test to determine whether a seizure

within the meaning of the fourth amendment occurred. However, Justice Powell, joined by the Chief Justice and Justice Blackmun, state in footnote 1 of a concurring-in-part and concurring-in-the-judgment opinion, that he did "not

constituted a seizure for law enforcement purposes. *See United States v. Mendenhall, supra,* 446 U.S. at 554–57, 100 S.Ct. at 1877–78.

Other circumstances in this case indicate in an objective manner that appellant was not being restrained for law enforcement purposes. *See* Article 7, UCMJ, 10 U.S.C. § 807; *United States v. Kinane,* 1 M.J. 309, 313–14 (C.M.A.1976). Sergeant Lander did not announce to appellant that he was being apprehended and the record does not evidence any of the other formalities normally accompanying arrest. *See Brown v. Illinois, supra.* Moreover, there was no notice or indication given to appellant that he was being detained for purposes of investigation. *See Dunaway v. New York, supra* at 442 U.S. 206–16, 99 S.Ct. at 2253–58. The record also does not indicate in any way that Sergeant Lander was a military policeman or held himself out as such when he communicated the order of Lieutenant Young to appellant. *See United States v. Kinane, supra.*

In the military context and under the circumstances of this case, it is clear that Sergeant Lander's conduct provided no objective indication to appellant that he was seized within the meaning of the fourth amendment. The Supreme Court has also indicated that it is not concerned with a police officer's subjective motivation in engaging in challenged government action. *United States v. Mendenhall, supra,* 446 U.S. at 553–58, 100 S.Ct. at 1876–79. *See Scott v. United States,* 436 U.S. 128, 137–38, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978). Accordingly, whether Sergeant Lander or Lieutenant Young intended to arrest appellant when this initial confrontation took place is irrelevant, except to the extent this state of mind was communicated to appellant. *See United States v. Mendenhall, supra,* 446 U.S. at 554 n. 6, 100 S.Ct. at 1877 n. 6 (Stewart, J.); 560 n. 1 (Powell, J.). We hold that it was not so communicated, and

necessarily disagree with" this view. *See* 3 W. LaFave, *Search and Seizure,* § 9.2 (1978). The dissenters in *Mendenhall* challenged this view but primarily objected to the way Justice Stewart applied this test in the case before them.

the evidence was not tainted at this point by any unlawful search and seizure. *See generally* 1 W. LaFave, *supra* at § 2.6(b); and 2 W. LaFave, *supra* at § 7.5(a).

■ The next question to be resolved is whether appellant's rights under the fourth amendment were violated when Sergeant Lander demanded and received the brown leather pouch from Owens. *See Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). In addressing this question, it must be remembered that appellant cannot assert any violation of Owens' rights occurring as a result of Sergeant Lander's action. *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). Nevertheless, he can challenge the seizure of the pouch from Owens on the grounds that it violated his legitimate expectation of privacy in Owens' possession of the pouch. *See Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); 2 W. LaFave, *supra* at § 8.6(a). The record must demonstrate that the appellant took actual precautions to insure his expectations of privacy in Owens' custody of the pouch and that society is prepared to accept these efforts as reasonable or normal to accomplish this end. *See Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979); *United States v. Haydel,* 649 F.2d 1152, 1154–55 (5th Cir. 1981).

■ The record does not support appellant on the latter point. First, Owens testified that he had no prior arrangement with appellant to possess or protect this or any other property on his behalf. *Cf. Walter v. United States,* 447 U.S. 649, 658–59, 100 S.Ct. 2395, 2402–03, 65 L.Ed.2d 410 (1980). Secondly, appellant's hurried and gratuitous request for Owens to keep the property was no more than a precipitous bailment incapable of providing any realistic expectation that his property would remain private and secure. *Rawlings v. Kentucky, supra.*

*See United States v. Mendenhall, supra* at 570 n. 5, 100 S.Ct. at 1885 n. 5. The view of Justice Stewart is deemed controlling and is consistent with the decision of this Court in *United States v. Kinane,* 1 M.J. 309 (C.M.A.1976).

Moreover, appellant had no other means to insure that the leather pouch would not be seized by a third party other than Owens. *See Rakas v. Illinois*, 439 U.S. 128, 148–49, 99 S.Ct. 421, 433, 58 L.Ed.2d 387 (1978); *cf. Jones v. United States, supra*. Finally, in spite of appellant's futile efforts to conceal this transfer, it was accomplished under suspicious circumstances in plain view of a government official. Under such circumstances, any expectation of privacy for appellant in Owens' possession of the pouch was purely subjective. It was simply unsupported by any action on his part upon which a reasonable person could expect this pouch to be free from seizure by Sergeant Lander.

The final question to be decided in this case is whether appellant's fourth amendment rights were violated by the warrantless opening of this brown leather pouch and the examination of its contents. *See Robbins v. California*, 453 U.S. 420, 426–27, 101 S.Ct. 2841, 2846, 69 L.Ed.2d 744 (1981); *United States v. Cordero*, 11 M.J. 210, 216 (C.M.A.1981). As indicated above, the seizure of this leather pouch by Sergeant Lander from Owens violated no fourth amendment rights of appellant. Yet, this fact alone does not, per se, justify the later inspection of its contents by Lieutenant Young without a valid search authorization. *See Robbins v. California, supra*, 101 S.Ct. at 2845; *Walter v. United States, supra*, 447 U.S. at 654–55, 100 S.Ct. at 2400–01. Accordingly, we must assess the above-mentioned conduct of Lieutenant Young in light of the circumstances of this case to determine whether it constituted unlawful government action which impermissibly invaded any legitimate expectation of privacy of appellant residing in the container itself. *See Rawlings v. Kentucky, supra*, 448 U.S. at 104–05, 100 S.Ct. at 2561.

We reject such a claim in the present case. The record clearly indicates not only that appellant had no legitimate expectation of privacy in the interior of this container, but he in fact relinquished any subjective expectation of privacy that he himself might have had in it prior to its inspection by Lieutenant Young. *See generally, Smith v. Maryland, supra*.

Turning to the record, we note that appellant took precautions to wrap the drugs in tin foil packets and place these packets in a leather pouch. He also closed this container, although it was not locked. These actions effectively concealed the contents of the container from public view and are reasonable manifestations by appellant of his expectation that the contents would remain private within the closed container. *See Robbins v. California, supra*, 101 S.Ct. at 2846. These circumstances demonstrating appellant's privacy expectations prior to Lieutenant Young's actions, however, do not stand alone in the record of trial.

Appellant also voluntarily transferred possession of this closed but unlocked container to a third party, Owens. He therefore assumed the risk that Owens himself might inspect its contents or turn it over to government officials who might inspect its contents. *See Smith v. Maryland, supra*. Moreover, for the reasons stated earlier, the precipitous bailment thrust upon Owens by appellant did not reduce this exposure and the accompanying risk. *See Rawlings v. Kentucky, supra*. Finally, prior to the inspection of the contents of the pouch, appellant disclaimed ownership of the brown leather pouch, thus abandoning any expectation of privacy he might have previously had in this container. *United States v. Veatch*, 647 F.2d 995, 998–99 (9th Cir. 1981). *See generally* 1 W. LaFave, *supra* at § 2.6(b).

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

Judge COOK concurs in the result.