UNITED STATES, Appellant,

v.

Philip E. MILLER, Staff Sergeant, U. S. Marine Corps, Appellee.

No. 40,032.

NCM 80 0024.

U. S. Court of Military Appeals.

May 10, 1982.

For Appellant: *Lieutenant Darrell M. Grams, JAGC, USNR* (argued); *Commander T. C. Watson, Jr., JAGC, USN, Lieutenant Commander J. G. Van Winkle, JAGC, USN* (on brief).

For Appellee: *Lieutenant Thomas P. Murphy, JAGC, USNR* (argued); *Lieutenant Commander Patrick A. Fayle, JAGC, USN* (on brief).

### OPINION OF THE COURT

COOK, Judge:

We are asked by certificate to determine the legality of a search of accused's field jacket which had been left in another's automobile. 10 M.J. 119. We hold that the search was legal and reverse the contrary holding of the Court of Military Review.

On March 2, 1979, First Sergeant Deetz was approached by a Marine who told him that there was marihuana in room 302 of

Barracks 255. Sergeant Deetz knew the informant was a member of his organization who previously had provided reliable information which had led to arrests and convictions. The sergeant passed the information to the company commander, who obtained an authorization to search room 302 from the acting commanding officer. Sergeant Deetz then went to room 302 of Barracks 255, where he found Lance Corporal Slaikeu, one of the room's occupants. He told Slaikeu that he "had reason to believe there was contraband in that room" and "asked" for (and received) consent to search Slaikeu's wall locker, where a quantity of marihuana was discovered. Sergeant Deetz then called the company office to have Lance Corporal Kranias, the other occupant of the room, sent over to the barracks. After being advised of his rights, Kranias also consented to a search of his wall locker, but nothing incriminating was found.[1] Sergeant Deetz then asked Kranias for permission to search his car and received written consent.[2] During the search of the automobile, a field jacket bearing staff sergeant's stripes was found on the floor behind the passenger seat. Inside the jacket, Sergeant Deetz found five bags of a substance that was later determined to be marihuana, which he seized. The accused (a staff sergeant) later confessed to the ownership of both quantities of marihuana.[3]

At trial, both the field jacket and the marihuana were admitted into evidence over the accused's objection.

1. Even though he had authorization to search, Sergeant Deetz obtained the consent of each of the individuals involved.

2. Sergeant Deetz testified that he had received "permission to search ... [Kranias'] gear ... [and] his personal property too"; he interpreted this to mean that the "car ... [was] part of his personal property." His obtaining permission to search the automobile was merely done in an effort to comply with the proper procedures for searching an automobile as they had been explained to him by the military police. Cf. United States v. Williams, 622 F.2d 830 (5th Cir. 1980) (en banc), cert. denied, 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981) (good faith exception to exclusionary rule); see Bivens v. Six Unknown Named Agents, 403 U.S. 388, 418, 91 S.Ct. 1999, 2015, 29 L.Ed.2d 619 (1971) (Burger, C. J., dissenting):

Contrary to his pleas, a general court-martial convicted the accused of five specifications alleging possession, transfer, and sale of marihuana, in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. He was sentenced to a dishonorable discharge, confinement at hard labor for 4 years, forfeiture of all pay and allowances and reduction to E–1. The convening authority approved the adjudged sentence.

On appeal, the United States Navy Court of Military Review found that Sergeant Deetz did not have authority to search the field jacket and that the jacket and the drugs within it should have been suppressed. The Navy Court based its decision on the fact that the insignia on the jacket indicated that it did not belong to Lance Corporal Kranias and, hence, he could not give consent to search it even though he did consent to the search of the entire car. That Court set aside that particular finding of guilty and affirmed the sentence except for confinement at hard labor in excess of 2 years and 6 months.

The Judge Advocate General of the Navy certified the following question:

WAS THE UNITED STATES NAVY COURT OF MILITARY REVIEW CORRECT AS A MATTER OF LAW WHEN IT FOUND THAT FIRST SERGEANT DEETZ CONDUCTED AN ILLEGAL SEARCH OF THE JACKET FOUND IN LANCE CORPORAL KRANIAS' CAR?

Suppressing unchallenged truth has set guilty criminals free but demonstrably has neither deterred deliberate violations of the Fourth Amendment nor decreased those errors in judgment that will inevitably occur given the pressures inherent in police work having to do with serious crimes.

See also United States v. Payner, 447 U.S. 727, 731–32, 100 S.Ct. 2439, 2444–45, 65 L.Ed.2d 468 (1980); United States v. Caceres, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979). The record here clearly shows that Sergeant Deetz was attempting to perform a proper and legal search.

3. At trial the accused repudiated the confession and denied ownership of both.

■ The United States Supreme Court has set forth the following rules for challenging the legality of searches: The person seeking to suppress the evidence produced by the search bears the burden of proving not only that the search was illegal, but also that he had a legitimate expectation of privacy in the area being searched. *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois*, 439 U.S. 128, 130 n.1, 99 S.Ct. 421, 423 n.1, 58 L.Ed.2d 387 (1978); *see United States v. Salvucci*, 448 U.S. 83, 85, 100 S.Ct. 2547, 2549, 65 L.Ed.2d 619 (1980), overruling *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Mil.R.Evid. 311.

■ There is no doubt that the owner of the automobile, Lance Corporal Kranias, gave an informed consent to the search of his automobile and everything within it. Thus, for the accused to prevail, he must establish that he had some "legitimate expectation of privacy" with regard to the jacket and its contents which were found within the area to be searched. *Rakas v. Illinois, supra* 439 U.S. at 143, 99 S.Ct. at 430. *See United States v. Payner*, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980); *United States v. Salvucci, supra; Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). This "actual (subjective) expectation of privacy" must also "be one that society is prepared to recognize as 'reasonable.' ..." *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979), quoting *Katz v. United States, supra*, 389 U.S. at 361, 88 S.Ct. at 516 (Harlan, J., concurring).

The accused had left his jacket in Kranias' automobile following a trip off base. Apparently, he did not leave Kranias any special instructions for safeguarding the jacket since the automobile was left unattended, with the windows rolled down, at the post exchange and at the company office. It is not clear whether Kranias was even aware that the jacket was in the automobile. Factually, we consider this situation to be similar to that in *United States v. Alewelt*, 532 F.2d 1165 (7th Cir. 1976), *cert. denied*, 429 U.S. 840, 97 S.Ct. 114, 50 L.Ed.2d 109 (1976). There, government agents who were investigating a bank robbery went to the office of defendant's mother. Inside the office, a brown leather jacket which resembled the description of that worn by the robber was hanging on a coat rack. Without other authority, the agents seized the jacket and found the stolen money and other items of apparel worn by the bank robber. The Court held that

by placing the jacket on a coat rack in the general working area of an outer office where he had no possessory interest, the defendant relinquished that degree of control, and reasonable expectation of privacy, necessary to sustain a challenge to the legality of the subsequent search and seizure on Fourth Amendment grounds.

*Id.* at 1168 (citing *Katz v. United States, supra*). Even though the agents' intrusion into the office might have been a technical trespass against the State of Illinois, there was no violation of any interest of the defendant subject to the protection of the Fourth Amendment. *Cf. United States v. Payner, supra.*

We, too, have recently had occasion to consider a seizure of contraband drugs from a suddenly-created bailee. *United States v. Sanford*, 12 M.J. 170 (C.M.A.1981). There, the accused was being escorted to his commander's office "and slapped ... [a] leather pouch into" another soldier's stomach with the direction, "hold this for me." *Id.* at 172. The pouch was taken from the second soldier and was found to contain marihuana. We held the seizure legal, saying:

In addressing this question, it must be remembered that appellant cannot assert any violation of ... [the second soldier's] rights occurring as a result of Sergeant Lander's action. *United States v. Salvucci*, ... [*supra*]. Nevertheless, he can challenge the seizure of the pouch from ... [the second soldier] on the grounds that it violated his legitimate expectation of privacy in ... [the second soldier's] possession of the pouch.... The record must demonstrate that the appellant took

actual precautions to insure his expectations of privacy in ... [the second soldier's] custody of the pouch and that society is prepared to accept these efforts as reasonable or normal to accomplish this end. [Citations omitted.]

*Id.* at 174.

In a similar vein, in *Rawlings v. Kentucky, supra,* defendant suddenly dumped a large quantity of drugs into a companion's purse when the police arrived at the scene. Shortly thereafter, the police asked her to empty her purse and she complied. The Supreme Court held that

even assuming that petitioner's version of the bailment is correct and that ... [the lady] did consent to the transfer of possession, the precipitous nature of the transaction hardly supports a reasonable inference that petitioner took normal precautions to maintain his privacy.

448 U.S. at 105, 100 S.Ct. at 2561 (footnote omitted).

 Nor can the accused, here, complain of Kranias' consent to the search of his automobile. It is

clear that when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or

other sufficient relationship to the premises or effects sought to be inspected.

*United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974) (footnote omitted).[4] By leaving his jacket in another person's unattended, unsecured automobile, the accused assumed the risk that the owner of the automobile, Kranias, might look inside the jacket, or might give consent to someone else to search it. *Frazier v. Cupp,* 394 U.S. 731, 740, 89 S.Ct. 1420, 1425, 22 L.Ed.2d 684 (1969); *see also United States v. Boyce,* 3 M.J. 711 (A.F.C.M.R. 1977), *pet. denied,* 4 M.J. 18 (C.M.A.1977). And, by so doing, he abandoned any "legitimate expectation of privacy" in the contents of the jacket for which he can now claim Fourth Amendment protection.[5] *Rakas v. Illinois, supra,* 439 U.S. at 143, 99 S.Ct. at 430; *Katz v. United States, supra; United States v. Weber,* 668 F.2d 552 (1st Cir. 1981). Accordingly, the certified question is answered in the negative.[6]

The decision of the United States Navy Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Navy for submission to that court for further review under Article 66, UCMJ, 10 U.S.C. § 866.

Chief Judge EVERETT and Judge FLETCHER concur.

---

**4.** *United States v. Matlock,* 415 U.S. 164, 171 n. 7, 94 S.Ct. 988, 993, n. 7, 39 L.Ed.2d 242 (1974), states:

The authority which justifies the third-party consent does not rest upon the law of property, ... but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

**5.** The development of the law defining "standing" is set forth in *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), and need not be repeated here. In sum, the Supreme Court rejected the doctrine of automatic standing recognized in *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d

697 (1960), in favor of the rule set forth therein. This holding undermines that portion of our decision in *United States v. Harris,* 5 M.J. 44, 46–47 (C.M.A.1978), which relied upon *Jones.*

**6.** Appellate defense counsel contend that since *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), and *United States v. Salvucci, supra,* were decided after the time of accused's trial, this case should be decided on the basis of *Jones v. United States* and *United States v. Harris,* both *supra.* However, as shown above, under precedents existing at the time of his trial, August 9–14, 1979, the accused's rights under the Fourth Amendment were not violated. *Cf.* Mil.R.Evid. 311(a)(2) and Analysis thereof, Manual for Courts-Martial, United States, 1969 (Revised edition). *See United States v. Cordero,* 11 M.J. 210, 213 n. 2 (C.M.A.1981).