UNITED STATES of America, Appellee,

v.

Shirley HOEY, Appellant.

No. 92–1831.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 14, 1992.

Decided Jan. 13, 1993.

James G. Abourezk, Rapid City, SD, argued, for appellant.

Kevin Victor Schieffer, Sioux Falls, SD, argued (Kevin V. Schieffer and Steven D. Rich, Rapid City, SD, on the brief), for appellee.

Before McMILLIAN, MAGILL, and HANSEN, Circuit Judges.

MAGILL, Circuit Judge.

A jury convicted Shirley Hoey of conspiracy to distribute controlled substances. The conviction was based upon the testimony of convicted co-conspirators and corroborating evidence found during a warrantless search of Hoey's apartment. Hoey argues on appeal that the district court[1] was clearly erroneous in not suppressing the evidence seized as a result of the warrantless search. She also argues that the district court was clearly erroneous in admitting the testimony of the co-conspirators. We affirm.

I.

During 1990, approximately twenty individuals were indicted on federal drug trafficking charges in Rapid City, South Dakota. Those indicted included Hoey's brother, Marvin McIlravy, who was purported to be a leader in a drug trafficking conspiracy. Other members of the conspiracy who were indicted included Scott Bauer, Dale Guthmiller, Gary Lange, and Arnold Johnston. All of these individuals ultimately testified against Hoey under plea agreements or grants of immunity. In a superseding indictment on January 17, 1991, Hoey was added as an additional co-conspirator and charged with conspiracy to distribute marijuana, cocaine, and methamphetamine in violation of 21 U.S.C. §§ 841 and 846.

Prior to Hoey's trial, the defense made a motion to suppress items seized as a result of a warrantless search of Hoey's Rapid City apartment on August 23, 1990. At a suppression hearing held on February 3, 1992, Hoey's landlord, Paul Evans, testified that he had rented an apartment to Hoey on a month-to-month basis. He testified that Hoey's rent check for July 1990 bounced. He questioned Hoey about her July rent during the month of July and spoke with her again on August 21, 1990. According to Evans, Hoey indicated at that time that she was moving out of the apartment, and she told Evans that a check for a month's rent was in the mail. Shortly thereafter, Evans learned that Hoey held a moving sale at the apartment. Early on the morning of August 23, 1990, Evans received a phone call from Hoey's next door neighbor indicating that Hoey had moved out.

At that point, Evans went to the apartment, saw signs advertising the moving sale, and found both the front and back doors locked. He opened the front door with his key and found the apartment in considerable disarray, with trash, items of clothing, tax and phone records, and some furniture strewn about. Evans then contacted the Pennington County Sheriff's Department. Later that same day, John Manolovitz of the sheriff's department conducted a warrantless search of the apartment. Manolovitz testified at the suppression hearing that his search yielded various items later introduced at trial as drug paraphernalia, including syringes, razor blades, small plastic bags with the word "Crank" written on them, notebooks recording names and dollar amounts, and inositol, which is a white powder used as a cutting agent for cocaine and methamphetamine.

Based on the testimony of Paul Evans and John Manolovitz at the suppression hearing, the district court found that the apartment had been abandoned and that the warrantless search did not violate the Fourth Amendment.

---

1. The Honorable Richard H. Battey, United States District Judge for the Western District of South Dakota.

At trial, several of the co-conspirators testified against Hoey. According to McIlravy, Hoey kept drugs for him at Hoey's apartment. McIlravy testified further that he instructed others to pick up drugs from Hoey. Bauer stated that he transported drugs between McIlravy and Hoey at McIlravy's request. Guthmiller testified that he purchased drugs from Hoey when McIlravy was unavailable. Lange testified that he sold $1000 of cocaine to Hoey and McIlravy. Johnston stated that he bought both marijuana and cocaine from Hoey. No rebuttal evidence or testimony was presented to contradict any of the testimony from the government witnesses.

## II.

### A. Suppression of Evidence

Hoey first argues that the items found in the search should have been suppressed because they were the product of an unreasonable search in violation of the Fourth Amendment.

██ A defendant bears the burden of proving that her own legitimate expectation of privacy was violated by the challenged search. *United States v. Monie*, 907 F.2d 793, 794 (8th Cir.1990). Whether a defendant has a constitutionally protected expectation of privacy involves a two-part inquiry. *Id.* In order successfully to challenge the constitutionality of a search, one must first show that she has a reasonable expectation of privacy in the areas searched or the items seized. *United States v. Reyes*, 908 F.2d 281, 285 (8th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1111, 113 L.Ed.2d 220 (1991). Second, one must also show that society is prepared to accept the expectation of privacy as objectively reasonable. *Id.*

██ Hoey did not meet her burden of proving that she had a reasonable expectation of privacy after she left her apartment on August 23, 1990. Hoey's original check for the July rent had bounced, and there is no evidence that she ever paid July's rent. Furthermore, there is no evidence that she ever paid rent for the month of August. Thus, at the time of the search, Hoey had not paid rent on the apartment in over six weeks. Hoey had not met her obligations under the month-to-month rental agreement.

This court has held that an individual has no reasonable expectation of privacy after the expiration of the rental period for a storage locker. *Id.* In addition, this court has held that one does not have a legitimate expectation of privacy in a hotel room after the rental term has expired. *United States v. Larson*, 760 F.2d 852, 854–55 (8th Cir.), *cert. denied*, 474 U.S. 849, 106 S.Ct. 143; 88 L.Ed.2d 119 (1985). This court does not suggest that there are equivalent privacy interests in storage lockers, hotel rooms, and apartments. However, *Reyes* and *Larson*, while distinguishable on their facts, help to support the conclusion that Hoey has not proven a reasonable expectation of privacy here, when the rent on her apartment was over six weeks past due and she had left the apartment.

██ The evidence indicates Hoey, in fact, abandoned her apartment. It is well established that the warrantless search of abandoned property does not constitute an unreasonable search and does not violate the Fourth Amendment. *Abel v. United States*, 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960). "Abandonment is an ultimate fact or conclusion based generally upon a combination of act and intent." *Friedman v. United States*, 347 F.2d 697, 704 (8th Cir.1965). Intent may be inferred from words spoken, acts done, and other objective facts, and all the relevant circumstances at the time of the alleged abandonment should be considered. *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir.1973). *See United States v. Wider*, 951 F.2d 1283, 1285 (D.C.Cir.1991); *United States v. Binder*, 794 F.2d 1195, 1198 (7th Cir.), *cert. denied*, 479 U.S. 869, 107 S.Ct. 234, 93 L.Ed.2d 159 (1986); *United States v. Pirolli*, 673 F.2d 1200, 1204 (11th Cir.), *cert. denied*, 459 U.S. 871, 103 S.Ct. 157, 74 L.Ed.2d 131 (1982). The issue is not abandonment in the strict property right sense, but rather, whether the defendant in leaving the property has relinquished her reasonable expectation of privacy so that the

search and seizure is valid. *Colbert*, 474 F.2d at 176. *See Parman v. United States*, 399 F.2d 559, 565 (D.C.Cir.), *cert. denied*, 393 U.S. 858, 89 S.Ct. 109, 21 L.Ed.2d 126 (1968); *City of St. Paul v. Vaughn*, 237 N.W.2d 365, 370–71 (Minn. 1975).

■ In this case, Hoey's acts and intent indicate that she abandoned the apartment. She personally told her landlord that she was leaving. She was six weeks behind on her rent. She held a moving sale, and her neighbor saw her leaving the apartment on August 23, 1990. Courts have found abandonment even in cases in which the abandoning party had time left on the rental period. *See, e.g. Feguer v. United States*, 302 F.2d 214, 248–50 (8th Cir.), *cert. denied*, 371 U.S. 872, 83 S.Ct. 123, 9 L.Ed.2d 110 (1962) (finding abandonment when defendant gathered desired belongings and departed never to return despite having a few days left on his rental term); *United States v. Sledge*, 650 F.2d 1075, 1078–80 (9th Cir.1981) (finding abandonment when defendants had paid through the end of the month, indicated that they were leaving at the end of the month, but from all outward appearances had left permanently prior to the end of the month). In this case, Hoey not only gave all appearances that she had abandoned her apartment, she was also behind on her rent, further indicating that she did not intend to remain in the apartment. The district court's conclusion that Hoey failed to prove a reasonable expectation of privacy in the contents of her apartment is not clearly erroneous. The search and seizure were constitutional and the evidence was properly admitted.

### B. Co-conspirator's Statements

Hoey next argues that the district court erred in admitting hearsay evidence from the alleged co-conspirators to prove the existence of the conspiracy.

■ Federal Rule of Evidence 801(d)(2)(E) states that a statement is not hearsay if it is made by a co-conspirator of a party during the course and in furtherance of the conspiracy. The admissibility of an alleged co-conspirator's statement is a question for the judge to decide. *United States v. Bell*, 573 F.2d 1040, 1043 (8th Cir.1978). In order for a statement to be admissible, it is not necessary for the prosecution to prove the preliminary facts relevant to Rule 801(d)(2)(E) beyond a reasonable doubt, but rather, the offering party must simply show the facts by a preponderance of the evidence. *Bourjaily v. United States*, 483 U.S. 171, 176, 107 S.Ct. 2775, 2779, 97 L.Ed.2d 144 (1987). Furthermore, the court may rely on the contents of the co-conspirator's statement itself, though not yet admissible, in determining whether the statement is, in fact, admissible. *Id.* at 178–80, 107 S.Ct. at 2780–81.

■ The contents of the co-conspirators' statements, in addition to the physical evidence seized at Hoey's apartment, clearly establish the existence of a conspiracy. Accordingly, we find Hoey's argument that the co-conspirators' statements were inadmissible hearsay is without merit. The district court did not err in admitting the statements.

### III.

For the foregoing reasons, we affirm Hoey's convictions.