GEISER, Judge:
A military judge sitting as a general court-martial convicted the appellant, consistent with his pleas,[1] of conspiracy to commit larceny and larceny of U.S. currency in excess of $15,000, in violation of Articles 81 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 921. The military judge sentenced the appellant to a dishonorable discharge, confinement for 6 years, total forfeiture of pay and allowances, and reduction to pay grade E-l. The convening authority approved the sentence as adjudged.
The appellant raises two assignments of error. First, he asserts that the military judge erred in finding that the appellant lacked standing to contest the legality of a search of his luggage by command personnel. Second, the appellant argues that the military judge erred when he found that the appellant would have inevitably confessed even without the evidentiary matters uncovered in the challenged search. The appellant requests that this court set aside his conviction.
We have examined the record of trial, the assignments of error, and the Government’s response. We conclude that the findings and sentence are correct in law and fact and that no error was committed that was materially prejudicial to the substantial rights of the appellant. Arts. 59(a) and 66(e), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).
Background
During his providence inquiry, the appellant admitted that between September and October 2002, he was undergoing recruit training at the Marine Corps Recruit Depot (MCRD), San Diego, California. During that period, he was assigned as the Platoon 1101 “scribe” with responsibility to perform certain administrative tasks within his platoon. One such task involved getting sealed envelopes from each recruit containing their locker combination, automatic teller machine (ATM) personal identification number (PIN), and other personal data.[2] The envelopes were turned over to the drill instructor and apparently stored in a location accessible to the appellant. Another task of the platoon scribe was to assign recruits to firewatch duty throughout the night. Record at 121.
The appellant admitted that he and another recruit conspired to temporarily appropriate ATM cards from the uniform pockets of recruits while they were sleeping at night. The conspirators would take the cards, access the sealed envelopes, obtain associated PINs, go to a nearby ATM, and steal money from various bank accounts. They would then return the ATM cards to the victims’ uniform pockets. The appellant acknowledged assigning himself and his co-conspirator to firewatch in the middle of the night to facilitate this plan. The men eventually took over $15,000.00 from multiple accounts and *555 split the money between themselves. Record at 101-05.
The day before boot camp graduation, three recruits from Platoon 1101 reported that funds totaling approximately $3,700.00 were collectively missing from their credit union accounts. Sergeant M of the Criminal Investigation Division was in charge of an investigation team that conducted quick interviews with recruits and staff in Platoon 1101 but were unable to immediately identify a suspect. The commanding officer of 1st Recruit Training Battalion, which included Platoon 1101, was informed of the issue that night. He was told that all the victims were from the appellant’s platoon and that access to the platoon’s barracks was generally limited to recruits within that platoon and staff members directly associated with that platoon. He was also told that the withdrawals occurred at the ATM located 50-60 feet from the Platoon 1101 barracks.[3] Record at 28-29; Appellate Exhibit XVII at 2.
At 0730 on the morning of recruit graduation, the standard routine was for all recruits to pre-stage their baggage outside their former barracks. While the recruits ate their last breakfast at the MCRD, drill instructors would turn the now empty barracks back over to battalion logistics personnel. This routine pre-staging of baggage was executed independently of the ongoing investigation.
At approximately 0900 on the morning of recruit graduation, the appellant’s commanding officer was updated that investigators working overnight had now identified at least five victims of theft. He was also informed that at least half the platoon had not been able to check their accounts so additional victims might exist. He was further told that no other platoons had reported similar thefts. Investigators were still unable to determine any culpable individual, however. Record at 40. The commanding officer was also aware that recruits were due to immediately depart on a 10-day leave period following graduation later that day.
At this point, the commanding officer ordered a guard put on the Platoon 1101 pre-staged baggage and directed the chain of command to muster the newly minted Marines for an inspection[4] of their personal belongings immediately following graduation. Based on the information available to him, the commanding officer testified that he believed a larceny had been committed and that evidence of the crime would be found in the personal baggage of Platoon 1101. Record at 29-30; AE XVII at 3.
The military judge found that following graduation, Platoon 1101 returned to their barracks and the search commenced.[5] Each recruit had three bags: a sea bag, a duffel bag, and a clothing bag. Drill instructors from throughout the battalion were called together and tasked to conduct the search. They were told that they were looking for a large amount of cash. The general conduct of the search consisted of each recruit being taken individually by a drill instructor to retrieve his or her baggage. The bags were emptied and the contents searched by the drill instructor. The recruit then repacked his bags and was allowed to depart on leave. AE XVII at 3-4.
The military judge also found that sometime after learning about the investigation but before being informed of the planned search, the appellant intentionally switched his clothing bag with the bag owned by Pri *556 vate S. All the recruits’ bags were virtually identical and did not have a visible tag reflecting the name of the owner. Record at 53. The military judge further found that the appellant secreted $1,500.00 and three of the envelopes containing the PINs of various recruits in a vent in the barracks. Sergeant M searched what he believed to be Private S’s baggage and found several rolls of $20 bills totaling $13,100.00. Private S denied knowledge of the money and of other items in the bag. Upon further examination, a bundle of letters and other items with the appellant’s name were discovered in the bag. The appellant was apprehended and read his Article 31(b), UCMJ, 10 U.S.C. § 831(b), rights, at which time he verbally confessed to the larceny. Record at 43-45; AE XVII at 4-5.
The defense made a motion at trial to exclude the evidence obtained during the mass search of Platoon 1101’s baggage. They also moved to exclude the appellant’s two subsequent confessions as fruits of the illegal search. The military judge heard evidence and argument and articulated the following conclusions of law:
1) If the accused divested himself of his property as the direct result of the illegal Government action, he did not voluntarily abandon his property and would therefore, retain standing to challenge the search and seizure of his bag and its content.
2) The search conducted of Platoon 1101 on 4 October 2002 was an unlawful search in violation of the 4th Amendment of the U.S. Constitution as it lacked probable cause focusing suspicion on a particular individual as a suspect.
3) [The appellant] voluntarily abandoned his clothing bag when, after learning of the investigation, but prior to the seizure and subsequent search of the baggage, [he] switched his bag with Recruit [S]. This occurred prior to [the commanding officer] ordering the posting of guards on the baggage and its subsequent search.
4) [The appellant’s] decision to switch bags and hide cash and envelops[sic] in a vent was not the direct result of illegal police action. Rather, it was the result of learning of the ongoing criminal investigation. Because of his voluntary abandonment of his bag by switching it with PFC [S], the accused lacks standing to challenge the legality of the search and seizure.
5) [The appellant] lacks standing to challenge the search that produced the $13,100.
6) Given the information know[n] by Sergeant [M], the investigation would have ultimately focused on [the appellant]. In particular, the information concerning the times of the withdrawals, access to the PINs, the correlation between the withdrawals and the returned opened and not returned envelopes, as well as the finding of the $1,500.00 and three envelopes in a vent, the investigation would have focused on [appellant] and he would have been interviewed as suspect in the larcenies. Thus, the incriminating statements made by [appellant] to Sergeant [M] inevitably would have been obtained through proper means. As the Platoon Scribe, [appellant] would have been interviewed after the $1500.00 and envelopes were found. He would have, thus, been placed in a similar situation to that in which he incriminated himself. AE XVII at 6-8.
Lack of Standing to Contest Search
The appellant argues that the military judge erred when he held that the appellant lacked standing to assert that the search of his luggage by recruit battalion personnel was illegal. Appellant’s Brief of 27 Apr 2005 at 5. A military judge’s evidentiary ruling is reviewed for abuse of discretion. Findings of fact will not be overturned unless they are clearly erroneous or unsupported by the record. Conclusions of law are reviewed de novo. In reviewing a ruling on a motion to suppress, we consider the evidence in the light most favorable to the prevailing party. We will reverse for an abuse of discretion if the military judge’s findings of fact are clearly erroneous or if his decision is influenced by an erroneous view of the law. United States v. Reister, 44 M.J. 409, 413 (C.A.A.F.1996)(quoting United States v. Sullivan, 42 M.J. 360, 363 (C.A.A.F.1995), United States v. Kitts, 43 M.J. 23, 28 (C.A.A.F. *557 1995), and United States v. Cardenas, 9 F.3d 1139, 1147 (5th Cir.1993)).
The military judge, the Government, and the appellant all concur that the search ordered by the recruit battalion commanding officer was illegal. We note that the record is devoid of any analysis of the legal impact of the exigent circumstances evident in the facts of this case. Given this, we will not speculate regarding whether the search could potentially have been upheld on that basis.[6] The military judge, the appellant, and the Government focus their analysis on whether the appellant, in fact, physically switched his clothing bag with one owned by another servieemember. The military judge heard testimony and found that the appellant did, in fact, intentionally switch his clothing bag with a virtually identical bag owned by Private S, whose gear was pre-staged next to the appellant’s. AE XVII at 6.
The appellant argues that the military judge’s finding of fact reflects only “one possible inference that can be drawn” from the evidence and that it is “equally plausible” that the appellant accidentally picked up the wrong bag and was unaware that the clothing bag in his possession was not his own. Appellant’s Brief at 6. While this is a possible interpretation of the evidence, the question on appeal is not whether there are other potentially plausible inferences that could be drawn from the evidence but, rather, whether the inferences drawn by the military judge were clearly erroneous or unsupported by the record. The appellant does not contend, and we do not find, that any of the military judge’s factual findings were clearly erroneous or unsupported by the record and we adopt them as our own.
The appellant next contends that, even assuming arguendo that he did physically switch the bags prior to the search, he did so only in response to the upcoming illegal search. Id. at 9. It is axiomatic that the Fourth Amendment protects individuals against unreasonable searches and seizures. “ ‘Under the Military Rules of Evidence, which implement the Fourth Amendment, evidence illegally seized by government agents from a protected place is inadmissible.’ ” United States v. Daniels, 60 M.J. 69, 70 (C.A.A.F.2004)(quoting United States v. Hester, 47 M.J. 461, 463 (C.A.A.F.1997)). The law has long held, however, that if an individual voluntarily abandons property, he cannot later claim that the police violated his constitutional rights by picking it up and using it against him. Hester v. United States, 265 U.S. 57, 58, 44 S.Ct. 445, 68 L.Ed. 898 (1924).
Whether an individual has abandoned his privacy interest in property is an ultimate fact or conclusion based generally upon a combination of act and intent. Intent may be inferred from words spoken, acts done, and other objective facts, and all the relevant circumstances at the time of the alleged abandonment should be considered. United States v. Hoey, 983 F.2d 890, 892 (8th Cir.1993). The issue is not abandonment in the strict property right sense, but rather, whether an individual, in leaving the property, had relinquished his reasonable expectation of privacy so that a subsequent search and seizure is valid. Id. We concur with the appellant that an individual who discards property in reaction to illegal police conduct has not abandoned his privacy interest in the property and has not thereby deprived himself of standing to object to the illegal conduct. See United States v. Mitchell, 12 M.J. *558 265, 268 (C.M.A.1982)(citing United States v. Swinson, 48 C.M.R. 197, 1974 WL 13793 (A.F.C.M.R.1974)); United States v. Robinson, 6 M.J. 109 (C.M.A.1979); Fletcher v. Wainwright, 399 F.2d 62 (5th Cir.1968); Massachusetts v. Painten, 368 F.2d 142 (1st Cir.1966); Moss v. Cox, 311 F.Supp. 1245 (E.D.Va.1970).
The order of events is critical to a proper analysis of this issue. The appellant acknowledges that, whether by accident or design, the clothing bags were switched prior to execution of the challenged search. He argues, however, that the switch was made after all the recruits “knew that an involuntary search” of the baggage was to be conducted before the members would be permitted to depart on leave. Appellant’s Brief at 10. The gravamen of the appellant’s argument impliedly challenges the military judge’s finding of fact that the bags were switched prior to the recruit commanding officer’s decision to place a guard on the baggage and to conduct the contested search. AE XVII at 3. As noted above, we find that the military judge’s factual findings were neither clearly erroneous nor unsupported by the record.
If, as held by the military judge, the bags were switched not only prior to the actual search but prior to any decision to conduct the search, then the appellant’s switching of the bags cannot have been motivated by illegal Government action. While the appellant apparently feared a search of his belongings, whatever apprehension he may have felt was based on his own assumptions of what would or could happen and not on any action or decision on the part of the commanding officer or the recruit chain of command. The existence of a criminal investigation at the time of abandonment does not of itself render the abandonment involuntary. See United States v. Rengel, 15 M.J. 1077 (N.M.Ct.Crim.App.1983); United States v. Jones, 707 F.2d 1169 (10th Cir.1983). We, therefore, find that the military judge did not abuse his discretion when he held that the appellant had voluntarily abandoned his privacy interest in his clothing bag and, therefore, lacked standing to contest the legality of a search of that bag.
Inevitable Discovery
The appellant next claims that the military judge abused his discretion when he found as a matter of law that the appellant would inevitably have confessed whether or not he was confronted with evidence obtained during the illegal search. Appellant’s Brief at 11. Our holding above renders this assignment of error moot.
Conclusion
We affirm the findings and the sentence, as approved by the convening authority.
Senior Judge CARVER and Judge VOLLENWEIDER concur.

. The appellant entered conditional guilty pleas, reserving his objection to the military judge's ruling that he lacked standing to contest a search of his luggage.

. The record is unclear whether the appellant was directed to collect the PINs along with the other personal information or whether he did so on his own.

. During the initial screening interviews, investigators were also told that the envelopes containing the PINs were returned to their owners during the week prior to graduation. In some cases, the envelopes were returned intact, in other cases the envelopes were returned but were tom or opened, and in yet other cases the envelopes were not returned at all. The investigators surmised that all the envelopes that had been returned were already destroyed or discarded. No additional information was pursued with respect to where the envelopes were kept and who had access to them. This information was apparently not passed on to the commanding officer before he ordered the contested search. Record at 34-35, 55.

. The term "inspection” and "search” were used interchangeably in the record of trial. The Government does not assert that the search of the appellant's bags constituted a permissible "inspection” under Navy regulations.

. The military judge’s findings of fact were developed in the context of a trial motion by the defense to exclude evidence obtained by the search of the recruits' baggage.

. In United States v. Khamsouk, 57 M.J. 282 (C.A.A.F.2002), our superior court observed that federal, state, and military courts have, when considering whether to exclude evidence obtained in violation of the Fourth Amendment right to privacy, applied the factors set forth in Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). In Khamsouk, our superior court held that seizure of a member’s knapsack was a minimal intrusion tailored to the circumstances as they developed. To the extent privacy interests were invaded, the court held that the intrusion was remarkably circumscribed and reasonable and that Naval Criminal Investigative Service agents acted reasonably in the face of exigent circumstances. The court determined that the military judge properly admitted the evidence seized. The case also cites to Chambers v. Maroney, 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970)(Court unwilling to characterize an immediate search as a greater intrusion than a seizure and an indefinite immobilization while securing warrant) and United States v. Johnson, 862 F.2d 1135, 1139 (5th Cir.1988)(detaining suspects while obtaining search warrant more intrusive than immediate search).