UNITED STATES, Appellee

v.

Rodolfo FLORES, Private First Class
U.S. Marine Corps, Appellant

No. 06-0675

Crim. App. No. 200400701

United States Court of Appeals for the Armed Forces

Argued February 12, 2007

Decided April 23, 2007

EFFRON, C.J., delivered the opinion of the Court, in which BAKER, ERDMANN, STUCKY, and RYAN, JJ., joined.

Counsel

For Appellant: Lieutenant Anthony Yim, JAGC, USN (argued); Lieutenant Aimee M. Cooper, JAGC, USNR.

For Appellee: Major Brian K. Keller, USMC (argued); Major Kevin C. Harris, USMC (on brief); Commander C. N. Purnell, JAGC, USN.

Amicus Curiae for Appellant: Jaymeski Pullins-Gorham (law student) (argued); Donald W. North, Esq. (supervising attorney), Brandon Brown (law student), Karen Hayes (law student), and Katherine Pellegran (law student) (on brief) – for the Southern University Clinical Education Program, Southern University Law Center.

Military Judge: R. S. Chester

**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Chief Judge EFFRON delivered the opinion of the Court.[1]

At a general court-martial composed of a military judge sitting alone, Appellant faced charges of conspiracy to commit larceny and six specifications of larceny. See Articles 81 and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 921 (2000). Prior to entering pleas, Appellant filed a motion challenging the legality of a search that had produced significant evidence on the charged offenses. The military judge denied Appellant's motion, ruling that Appellant lacked standing to challenge the legality of the search. Following denial of the motion, Appellant entered conditional guilty pleas, preserving his right to appeal the military judge's ruling on the search.

After receiving Appellant's pleas, the military judge found Appellant guilty of the charged offenses and adjudged a sentence that included a dishonorable discharge, confinement for six years, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The convening authority approved the sentence, but suspended execution of that portion of the sentence adjudging confinement in excess of sixty months, for a

[1] We heard oral argument in this case at the Southern University Law Center in Baton Rouge, Louisiana, as part of the Court's "Project Outreach." See United States v. Mahoney, 58 M.J. 346, 347 n.1 (C.A.A.F. 2003). This practice was developed as part of a public awareness program to demonstrate the operation of a federal court of appeals and the military justice

period of twelve months from the date of the convening authority's action. The convening authority approved forfeitures of all pay and allowances only until such time as the approved confinement was lawfully terminated, and thereafter, approved forfeitures of two-thirds pay per month while Appellant remained in a pay status. The United States Navy-Marine Corps Court of Criminal Appeals affirmed. United States v. Flores, 63 M.J. 557 (N-M. Ct. Crim. App. 2006).

On Appellant's petition, we granted review of the following issues:

> I. WHETHER THE LOWER COURT ERRED WHEN IT HELD THAT APPELLANT DID NOT HAVE STANDING IN ORDER TO CHALLENGE THE GOVERNMENT'S SEARCH.
>
> II. WHETHER THE MILITARY JUDGE ERRED WHEN HE CONCLUDED THAT THE GOVERNMENT WOULD HAVE "INEVITABLY DISCOVERED" APPELLANT'S CONFESSION.

We hold that Appellant lacked standing to challenge the legality of the Government's search. In light of our conclusion on standing under Issue I, we need not resolve Issue II.

## I. STANDING TO CHALLENGE THE LEGALITY OF A SEARCH

Evidence obtained as a result of an unlawful search is inadmissible against an accused who makes a timely motion or objection establishing "a reasonable expectation of privacy in

---

system.

the person, place or property searched." Military Rule of Evidence (M.R.E.) 311(a)(2); see United States v. Daniels, 60 M.J. 69, 70 (C.A.A.F. 2004). An accused bears the burden of demonstrating "a subjective expectation of privacy which is objectively reasonable." United States v. Monroe, 52 M.J. 326, 330 (C.A.A.F. 2000); see United States v. Miller, 13 M.J. 75, 77 (C.M.A. 1982) (the accused "bears the burden of proving . . . that he had a legitimate expectation of privacy in the area being searched") (citing Rawlings v. Kentucky, 448 U.S. 98 (1980); Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978)); see also United States v. Freitas, 716 F.2d 1216, 1220 n.2 (9th Cir. 1983) (concluding that when "a defendant fails to meet this burden in the suppression hearing, he cannot prevail on appeal even though the Government also did not establish the contrary, unless, of course, the record on appeal independently demonstrates the requisite standing").

An accused has no privacy interest in voluntarily abandoned property, and lacks standing to complain of the search or seizure of such property. See, e.g., California v. Hodari, 499 U.S. 621, 629 (1991) (judge properly denied motion to suppress evidence of cocaine abandoned by defendant while fleeing from police); Miller, 13 M.J. at 78. If, however, a person "discard[s] articles in reaction to illegal police conduct," such action does not deprive the individual "of the right to

object to the illegitimacy of the police action" in searching or seizing those articles.  United States v. Robinson, 6 M.J. 109, 110 (C.M.A. 1979).

## II.  EVIDENCE PRESENTED AT THE SUPPRESSION HEARING

The challenged search took place on the date that Appellant's platoon graduated from recruit training at the Marine Corps Recruit Depot at San Diego, California.

On the evening before graduation, the commanding officer of Appellant's platoon reported to his battalion commander that several recruits had discovered unauthorized automatic teller machine (ATM) withdrawals from their credit union accounts amounting to approximately $3,700.  Appellant was one of the recruits reporting lost funds.

Agents from the Criminal Investigation Division (CID) immediately launched an investigation into the apparent thefts, questioning each of the platoon's approximately sixty recruits into the night in an attempt to identify a suspect.  By the morning of graduation day, the investigation had not yet yielded a suspect, but had focused suspicion on the members of Appellant's platoon.

The schedule for graduation day called for the recruits to participate in a graduation ceremony.  They would then depart

immediately after the ceremony for ten days of leave before reporting for further training at the School of Infantry.

On the morning of graduation day, the recruits placed their bags, already packed in anticipation of their expected departure, in a staging area.  They then left the barracks to prepare for graduation.  While the recruits were on the parade deck forming up for graduation, the CID and a credit union representative briefed the battalion commander on the status of the ongoing investigation.  Taking note of the lack of suspects and imminent departure of the graduates, the battalion commander became concerned that any evidence would disappear once the recruits departed.  He ordered a guard and a drill instructor to stand guard over the recruits' bags, and ordered a search to be conducted after graduation.  Although the recruits had been interviewed by the CID and were aware that an investigation was ongoing, the record is silent as to when they learned that their belongings would be searched.

After graduation, the recruits collected their bags from the staging area and marched back to the squad bay.  In the bay, they were ordered to line up with their bags.  One by one, each recruit was ordered to empty his bags.  After a drill instructor searched the contents of each bag, its owner was directed to repack it.

The bags carried by Appellant were searched and repacked without incident. As he was walking out the door, a drill instructor alerted the CID to the discovery of a substantial amount of cash in a bag that had been unpacked by Recruit S. When viewing the contents, Recruit S denied ownership of the bag, and expressed a belief that the bag had been switched when the newly graduated Marines had been escorted to their bags just before returning to the barracks for the search.

The CID agents inspected the contents of the clothing bag unpacked by Recruit S and found a substantial amount of material pointing to Appellant as the owner of the bag, including photographs of Appellant, mail addressed to Appellant, and uniforms bearing Appellant’s name. At the same time, the clothing bag carried by Appellant was determined to be Recruit S’s bag, and was returned to Recruit S. Appellant was placed under arrest, and soon thereafter, he confessed to the conduct that subsequently resulted in his court-martial. After Appellant’s arrest, other members of the platoon discovered unauthorized withdrawals from their accounts.

At trial, Appellant moved to suppress evidence obtained as a result of the search of his clothing bag, including his confession. At the hearing on the motion to suppress, the military judge heard testimony from the commanding officer who ordered the search, a CID agent who participated in the

investigation, and the drill instructor who conducted the search that revealed the incriminating evidence in Appellant's bag.

In the course of ruling on the issue, the military judge entered findings of fact and conclusions of law. The military judge found that Appellant voluntarily abandoned his bag by switching bags with another recruit before the search was ordered. As matter of law, the military judge held that Appellant lacked standing to challenge the legality of the search of that bag, and denied the motion to suppress.


## III. DISCUSSION

We review the military judge's denial of the motion to suppress for abuse of discretion. United States v. Khamsouk, 57 M.J. 282, 286 (C.A.A.F. 2002). Findings of fact are reviewed for clear error, while conclusions of law are reviewed de novo. Id. We view the evidence in the light most favorable to the prevailing party. United States v. Reister, 44 M.J. 409, 413 (C.A.A.F. 1996).

Appellant contends that the military judge's finding that the bags were switched before the search was ordered is unsupported by the record and therefore erroneous. According to Appellant, the evidence suggests that the bags were switched at the last minute in a hasty attempt to avoid detection during the search. Under Appellant's theory, the bags were switched after

he learned of an imminent, illegal search. In that context, according to Appellant, he did not voluntarily abandon his bag, and therefore did not lose standing to challenge the search.

The motion hearing provided the military judge with scant evidence on the question of whether Appellant abandoned his clothing bag voluntarily or in response to the knowledge of the imminent search. The testimony established that on October 3, 2002, Appellant reported that there had been unauthorized withdrawals from his credit union account. The military judge found that Appellant reported the withdrawals in an effort to shift suspicion away from himself. The military judge also found that no one was allowed access to the recruits' bags from the time they were placed under guard until they were searched. He concluded as a matter of fact that Appellant intentionally switched clothing bags with Recruit S before the commanding officer posted guards over the bags and ordered a search.

The testimony at the hearing established that Appellant, when asked to unpack his bag, presented Recruit S's clothing bag to be searched, passed it off as his own, and repacked the contents of the bag after it had been searched. He then took Recruit S's bag with him and walked out the door, without telling anyone that the bag was not his. The military judge found that the bags carried by Appellant were searched before Recruit S's bags were searched, and that Appellant was walking

out the door after having had his bags searched when money was found in Recruit S's bag.

The only direct evidence concerning when the bags were switched is the drill instructor's testimony that Recruit S said he thought the bags were switched when the Marines returned to their gear after graduation. The defense did not object to the drill instructor's hearsay testimony. Appellant could have testified regarding the circumstances of the search, including the issue of voluntary abandonment, without incriminating himself on the charged offenses. See M.R.E. 311(f). He did not testify, however.

On appeal, Appellant bears the burden of showing a reasonable expectation of privacy in his clothing bag after it was switched with Recruit S's bag. We view the evidence in the light most favorable to the Government, including Appellant's steps to divert suspicion from himself before the search by reporting that he had been victimized by unauthorized withdrawals, the platoon's limited access to the guarded bags immediately prior to the search, and the drill instructor's hearsay testimony suggesting that Appellant may not have switched the bags until after the search was ordered. In that context, the military judge did not make a clearly erroneous finding of fact in concluding that the bags were switched before the commanding officer ordered the search. Because the military

judge properly determined that Appellant abandoned his bag voluntarily and not in response to the allegedly illegal police conduct, we conclude that Appellant did not carry his burden at the motion hearing, and has not carried his burden on appeal, of demonstrating that he had a reasonable expectation of privacy in the bag. Accordingly, Appellant lacked standing to challenge the validity of the search or the admission of derivative evidence, including his confession.

## IV. CONCLUSION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.