UNITED STATES, Appellee

v.

Darrel A. WESTON, Staff Sergeant
U.S. Marine Corps, Appellant

No. 08-0594

Crim. App. No. 200600985

United States Court of Appeals for the Armed Forces

Argued March 17, 2009

Decided June 11, 2009

STUCKY, J., delivered the opinion of the Court, in which BAKER
and RYAN, JJ., joined. EFFRON, C.J., filed a separate opinion
concurring in the result. ERDMANN, J., filed a separate opinion
concurring in the result.


Counsel


For Appellant: Major Richard D. Belliss, USMC (argued).


For Appellee: Captain Geoffrey S. Shows, USMC (argued); Colonel
Louis J. Puleo, USMC, and Major Tai D. Le, USMC (on brief);
Major Elizabeth A. Harvey, USMC, Commander Paul LeBlanc, JAGC,
USN, and Brian K. Keller, Esq.


Military Judge: B. W. MacKenzie


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Judge STUCKY delivered the opinion of the Court.

There was something odd about the electric razor in the bathroom. Staff Sergeant (SSgt) ME, a female Marine court reporter, noticed it sitting on the wall locker shelf in the bathroom she shared with Appellant, the senior court reporter, whom she knew to be experienced with computers and surveillance equipment. SSgt ME typically changed clothes in the bathroom and for the past year had felt that she was being watched, a feeling that she attributed to paranoia. But this time the circumstances were simply too odd and her suspicions too strong. SSgt ME took the razor with her when she left work that day. Her attempt to open the razor's casing ended at Sears with a "Torque" T7 screwdriver. Inside the razor she found a camera.

We granted review in this case to determine two issues. First, whether the search of Appellant's house was reasonable where Appellant objected to the search, but was not physically present when the search was conducted pursuant to his wife's consent. Second, if, as Appellant argues, the search was unreasonable under Georgia v. Randolph, 547 U.S. 103 (2006), whether the inevitable discovery exception would allow admission of the seized evidence. As we find that the search was reasonable under these circumstances, we do not reach the second issue.

United States v. Weston, 08-0594/MC

## I.  Background

Following her discovery of the hidden camera, SSgt ME contacted both the Provost Marshal's Office (PMO) and Appellant's wife to report the discovery.  When Appellant and his wife arrived at their home that evening, they were met by military police who, after granting the wife permission to accompany Appellant, followed them to the PMO where they were placed in separate rooms.

Once in the room, agents of the Criminal Investigative Division informed Appellant of his rights under Article 31, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 831 (2000), and Military Rule of Evidence (M.R.E.) 305.  Appellant promptly invoked his right to remain silent and to consult with an attorney.  When the agent questioning Appellant asked for consent to search Appellant's home, Appellant unequivocally objected.  The agent then left Appellant alone in the room. Appellant used the time to call a friend, Robert Fricke, who was a former military judge and Marine Corps judge advocate.  That conversation was interrupted when the agents took Appellant's cellular phone away and placed him incommunicado in a holding cell.

Following Appellant's refusal to consent to a search of the home, the same agent who asked Appellant for consent asked Mrs. Weston, who was sitting in a different room, the same question.

3

Mrs. Weston consented to the search.  She did not ask whether the investigators had asked her husband to consent, and the investigators did not inform her that he had refused consent.

The search of the house Appellant and his wife lived in proceeded with Mrs. Weston present.  During the search Mr. Fricke telephoned Mrs. Weston twice.  The first call was to inquire as to the family's welfare; the second was to inform Mrs. Weston that she could, and in Mr. Fricke's opinion should, withdraw her consent to the search.  Mrs. Weston did so immediately.  The agents searching the home gathered up the materials they had already seized and left the home.  Among those items was Appellant's computer.  A subsequent search of the computer revealed nonconsensual images of SSgt ME changing her clothes and using the bathroom.  The computer also contained photos of the interior of SSgt ME's house.

## II.  Procedural Posture

Appellant was charged with three violations of the Uniform Code of Military Justice (UCMJ).  The first two charges were for assault and housebreaking, under Articles 128 and 130, UCMJ, 10 U.S.C. §§ 928, 930 (2000).  The third charge involved two specifications of invasion of privacy and one specification of wrongfully impeding an investigation.  Article 134, UCMJ, 10

4

U.S.C. § 934 (2000). A general court-martial with members found Appellant guilty of housebreaking and of the two specifications of invasion of privacy.

Prior to trial, Appellant moved to suppress the evidence that was seized from his home. The military judge denied this motion. On appeal, a panel of the United States Navy-Marine Corps Court of Criminal Appeals (CCA) held that the search of Appellant's home was unreasonable and violated Appellant's Fourth Amendment rights. United States v. Weston, 65 M.J. 774, 785 (N-M. Ct. Crim. App. 2007). The Government moved for a rehearing en banc. On rehearing, the CCA reversed the panel, holding that the military judge did not abuse his discretion in denying the defense motion to suppress. United States v. Weston, 66 M.J. 544, 546-47 (N-M. Ct. Crim. App. 2008).

### III. Discussion

Appellant argues that the search of his home was unreasonable under Georgia v. Randolph, and, therefore, the en banc CCA opinion must be overturned. We disagree. The facts of this case are distinguishable from those of Randolph, and are more like those of the cases Randolph specifically preserved.

We review a military judge's decision to admit evidence for an abuse of discretion. United States v. Gallagher, 66 M.J. 250, 253 (C.A.A.F. 2008). We review findings of fact for clear

5

error and conclusions of law de novo.  Id. at 253 (citing United States v. Flores, 64 M.J. 451, 454 (C.A.A.F. 2007)).

The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

U.S. Const. amend. IV.

Ordinarily, warrantless entry into a person's house is unreasonable per se.  Randolph, 547 U.S. at 109.  While the rule against warrantless entry is vigilantly guarded, the voluntary consent of an individual possessing authority is one "carefully drawn" exception.  Jones v. United States, 357 U.S. 493, 499 (1958); see Illinois v. Rodriguez, 497 U.S. 177, 181 (1990). Voluntary consent to search may be obtained from the person whose property is to be searched or from a fellow occupant who shares common authority over the property.  United States v. Matlock, 415 U.S. 164, 171 (1974); United States v. Gallagher, 66 M.J. 250, 253 (C.A.A.F. 2008).

In Matlock, consent to search was granted by the co-occupant, who was on the premises while the defendant was detained in a police car nearby.  Matlock, 415 U.S. at 166; Randolph, 547 U.S. at 109-10.  Ultimately, the Court determined that "the consent of one who possesses common authority [or

6

other sufficient relationship] over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." Matlock, 415 U.S. at 170-71; see Gallagher, 66 M.J. at 253; United States v. Rader, 65 M.J. 30, 30-31 (C.A.A.F. 2007). Common authority over a home extends to all items within the home, unless the item reasonably appears to be within the exclusive domain of the third party. Gallagher, 66 M.J. at 253-54 (holding that an unlocked briefcase located within an attached garage, which had been converted into a den, fell within the common authority of Appellant's wife). Additionally, common authority can be obtained via mutual use of the property by a person with joint access or control. Rader, 65 M.J. at 33-34 (quoting Matlock, 415 U.S. at 171 n.7) (holding that a roommate with shared access to another's computer has common authority over the computer and can grant consent to search).

Appellant wishes us to find that the search of his home was unreasonable in light of Randolph. In Randolph, the Supreme Court addressed the application of the Matlock rule where the nonconsenting occupant was "physically present" when he refused permission to search. Randolph, 547 U.S. at 109. The Supreme Court held that express refusal by a physically present co-occupant renders a warrantless search unreasonable and invalid as to him. Id. at 106. The specific combination of the

7

physical presence of the cotenant at the scene, plus the
cotenant's "immediate challenge" renders the warrantless search
unreasonable and invalid. Randolph, 547 U.S. at 111, 113.

The distinction between an objection to a search lodged by
a cotenant who is physically present and one who is not is a
formal one, but it is the one explicitly drawn by the Supreme
Court in Randolph:

> If those cases [Matlock and Rodriguez] are not to
> be undercut by today's holding, we have to admit
> that we are drawing a fine line; if a potential
> defendant with self-interest in objecting is in
> fact at the door and objects, the co-tenant's
> permission does not suffice for a reasonable
> search, whereas the potential objector, nearby but
> not invited to take part in the threshold
> colloquy, loses out.
>
> This is the line we draw, and we think the
> formalism is justified.

Randolph, 547 U.S. at 121.

In his separate opinion, Judge Erdmann distinguishes a
"nonconsenting" cotenant, such as Matlock (sitting in the squad
car) and Rodriguez (asleep in another room), from an "objecting"
one. United States v. Weston, __ M.J. __ (7) (C.A.A.F. 2008)
(Erdmann, J., concurring in the result). This distinction is
not compelled by Supreme Court precedent, and we are unwilling
to draw it. The term "nonconsenting" is general and inclusive.
It encompasses all who do not expressly consent, including those
who refuse, those who remain silent, and those who are not

8

asked. Reasonableness of a warrantless search due to voluntary consent is a simple binary proposition; either there is consent or there is not. Matlock determined that a cotenant can provide consent to search, and Randolph merely laid out the limited circumstances under which a cotenant's objection can overrule that consent.

Appellant urges us to extend the holding of Randolph and adopt the reasoning of the United States Court of Appeals for the Ninth Circuit in United States v. Murphy, where the court discounted the significance of the physical presence and immediate challenge of the party not consenting to the search. 516 F.3d 1117, 1123-24 (9th Cir. 2008). Appellant further argues that we should look more generally to society's widely shared social expectations in determining the reasonableness of consent searches. We decline to do so.

While "widely shared social expectations" underlie the reasoning in Randolph, 547 U.S. at 111 ("The constant element in assessing Fourth Amendment reasonableness in the consent cases, then, is the great significance given to widely shared social expectations . . ."), the Supreme Court specifically declined to overrule Matlock and drew the line with the physical presence at the threshold. See id. at 120-22. We decline to adopt the Ninth Circuit's reasoning and thus do not expand the holding of Randolph at the expense of Matlock.

9

Where one party has joint access and control to a property and voluntarily consents to a search, the warrantless search is reasonable. Rather than Murphy, we find more persuasive the approach adopted by the United States Courts of Appeals for the Seventh and Eighth Circuits, which held that Randolph did not "permanently disabl[e] [a cotenant's] shared authority to consent to an evidentiary search of her home." United States v. Henderson, 536 F.3d 776, 777 (7th Cir. 2008); see United States v. Hudspeth, 518 F.3d 954, 960-61 (8th Cir. 2008).

Appellant also argues that the Criminal Investigative Division (CID) agents removed him from his home in order to prevent him from voicing an effective objection to the search. Randolph recognizes an exception to its holding in cases where there is evidence "that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection." Randolph, 547 U.S. 121. In such cases, a search consented to by the remaining tenant may not be reasonable. Id. In this case, however, there is no evidence that the agents removed Appellant from his home so that he could not effectively object to its search; the objection was not lodged until Appellant was at the PMO and there were no circumstances that should have led the police to anticipate it.

Here, the search was reasonable; the CID obtained consent from Appellant's wife who possessed common authority over the

premises.  As in Matlock, Appellant was a nonconsenting party who shared authority over the premises, but was not present to provide immediate challenge to his wife's consent to search. The "fine line" drawn by the Supreme Court in Randolph indicates that physical presence and immediate challenge is required for the nonconsenting tenant's objection to nullify the reasonableness of the search.  That was not the case here, thus the holding of Randolph does not apply and the search was reasonable.

## IV.  Decision

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

EFFRON, Chief Judge (concurring in the result):

I agree with that portion of Judge Erdmann's separate opinion highlighting the distinctions between the present case and the guidance of Georgia v. Randolph, 547 U.S. 103 (2006), and United States v. Matlock, 415 U.S. 164 (1974).  See __ M.J. __ (3-7) (Erdmann, J., concurring in the result).  In that context, I have reservations about the majority opinion's attempt to define the Randolph-Matlock relationship, see __ M.J. __ (6-10), particularly in view of the uncertain contours of "widely shared social expectations" and "immediate challenge[s]" under Randolph, 547 U.S. at 111, 113.  Instead, I would resolve the present appeal under the established principles of inevitable discovery.

As a general matter, "[e]vidence obtained as a result of an unlawful search or seizure made by a person acting in a governmental capacity is inadmissible against the accused . . . ."  Military Rule of Evidence (M.R.E.) 311(a).  Among the exceptions to this general rule, the inevitable discovery doctrine provides that evidence from an otherwise unlawful search or seizure "may be used when the evidence would have been obtained even if such unlawful search or seizure had not been made."  M.R.E. 311(b)(2); see Nix v. Williams, 467 U.S. 431, 444 (1984); United States v. Wallace, 66 M.J. 5, 10 (2008); Manual for Courts-Martial, United States, Analysis of the Military

Rules of Evidence 311(b)(2) app. 22 at A22-17 (2008 ed.).  In applying the inevitable discovery doctrine, we bear in mind that it is an exception that must be interpreted narrowly so that it does not subsume the general prohibition on the use of evidence obtained from unlawful searches.  See 6 Wayne R. LaFave, Search and Seizure, §11.4(a) (4th ed. 2004).  Assuming that the search of Appellant's home was unlawful, see __ M.J. __ (1, 4-8) (Erdmann, J., concurring in the result), the present case falls well within the narrow confines of the inevitable discovery exception.

To demonstrate inevitable discovery, the prosecution must establish by a preponderance of the evidence that "when the illegality occurred, the government agents possessed, or were actively pursuing, evidence or leads that would have inevitably led to the discovery of the evidence and that the evidence would inevitably have been discovered in a lawful manner had not the illegality occurred."  United States v. Kozak, 12 M.J. 389, 394 (C.M.A. 1982).  Alternatively, a military judge may deny a defense suppression motion under the inevitable discovery doctrine if assured that "the routine procedures of a law enforcement agency would inevitably find the same evidence, . . . even in the absence of a prior or parallel investigation."  United States v. Owens, 51 M.J. 204, 210-11 (C.A.A.F. 1999).

In the present case, the Government established that at the time of the alleged unlawful search, law enforcement officers possessed evidence that would have inevitably led to the discovery of the evidence pursuant to a valid probable cause search under M.R.E. 315(a).  Prior to searching the Weston home under the now-disputed consent provided by Appellant's wife, law enforcement officials possessed the following information, more than sufficient to establish probable cause, that would inevitably have led to discovery of the evidence at issue:  (1) Staff Sergeant (SSgt) ME -- the victim of Appellant's concealed photography -- reported to the military police the highly unusual fact that in the shared restroom attached to the office she occupied with Appellant, she had located a micro-camera hidden inside an electric razor; (2) based upon her personal knowledge of Appellant, she identified the razor with the concealed camera as Appellant's property and presented it to the military police; (3) upon presentation of the razor and concealed camera, SSgt ME informed agents in the Criminal Investigation Division (CID) that Appellant had "an extensive knowledge of computers" and that she had seen similar surveillance cameras in his home on prior occasions; (4) SSgt ME told the military police that after discovering the concealed camera, she contacted Appellant's wife, warned his wife of her suspicions, and was told by his wife that Appellant had locked

himself in the home computer room for approximately one hour after work that day; (6) law enforcement officials then determined that in view of Appellant's extensive knowledge of computers, they needed "to get to his computer as soon as possible"; (7) a law enforcement officer stationed at the Weston residence met Appellant and his wife outside their home and they accompanied the officer to the CID office; (8) at the CID office, Mrs. Weston presented the officers with two items -- a working electric razor and an adaptor used to download images taken by the micro-camera -- in effort to show that Appellant must have accidentally taken the micro-camera razor to work instead of the operating razor.

This evidence, which was presented to the military judge in the course of the suppression motion, demonstrated that law enforcement authorities had ample probable cause to search and seize Appellant's home computer -- particularly as it was more likely that he would have viewed any images on his home computer rather than on the routinely-monitored government computer he used at work. As we noted in United States v. Leedy, 65 M.J. 208, 213 (C.A.A.F. 2007), probable cause "requires more than bare suspicion, but something less than a preponderance of the evidence." The evidence available to the law enforcement officials readily met that standard and provided probable cause to believe that Appellant used an electric razor to hide a

4

micro-camera in the restroom that he shared with SSgt ME; that the micro-camera was used to take pictures of SSgt ME during her private use of the bathroom; that Appellant used an adaptor to download images from the hidden micro-camera; that he brought the adaptor to his home; and that he used the adaptor and his home computer to view images of SSgt ME during her private use of the bathroom. Combined, these facts "lead one to believe that it [was] more probable than not that contraband [would] be present" in Appellant's marital home. Leedy, 65 M.J. at 213.

In light of this information, the evidence presented by the Government at trial established that the military police possessed knowledge that would have led to a lawful search of the Weston home in compliance with routine police practices. See Owens, 51 M.J. at 210-11; Kozak, 12 M.J. at 394.

Appellant suggests that discovery was not inevitable because the evidence could have been intentionally or inadvertently destroyed during the period in which the law enforcement officials would have sought issuance of a search authorization. The speculative possibility that a suspect might have destroyed evidence, however, does not preclude application of the inevitable discovery doctrine in view of the fact that law enforcement officials may institute a temporary, warrantless seizure of the premises in such circumstances. Illinois v. McArthur, 531 U.S. 326, 331-34, 337 (2001) (finding permissible

temporary seizures of property supported by probable cause and designed to prevent the loss of evidence while police obtain search authorization).

In view of these considerations, I would affirm on the basis that the record establishes facts under which the evidence at issue was admissible pursuant to the inevitable discovery doctrine.

ERDMANN, Judge (concurring in the result):

Because I would find that the search in this case violated Weston's Fourth Amendment rights, I respectfully disagree with the holding of the majority opinion. However, I agree with that portion of the Chief Judge's opinion concurring in the result pertaining to inevitable discovery because I agree that the evidence would have been inevitably discovered and thus admissible under Military Rule of Evidence 311(b)(2). I therefore concur in the result.

The Fourth Amendment protects against unreasonable searches and seizures, and "[a]t the very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." Silverman v. United States, 365 U.S. 505, 511 (1961). "With few exceptions, the question whether a warrantless search of a home is reasonable and hence constitutional must be answered no." Kyllo v. United States, 533 U.S. 27, 31 (2001) (citations omitted). A well recognized exception to a warrantless search, however, is one in which an individual whom the police reasonably believe possesses common authority over the premises consents to the search. Illinois v. Rodriguez, 497 U.S. 177, 181 (1990); see also United States v. Matlock, 415 U.S. 164, 170, 177 n.14 (1974). The issue presented in this case -- whether consent by one tenant is valid

against another tenant who has already refused such consent -- is an area of law that is still in development.

Staff Sergeant Weston came home to find a military policeman stationed outside his family's home. The military policeman told Weston that his presence was requested at the military police station. Weston and his wife then drove to the station, followed by the military policeman. Upon their arrival, Weston and his wife were separated, and Agent Stevenson took Weston to her office to question him. Stevenson informed Weston of the offenses he was suspected of committing and advised him of his rights under Article 31, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 831 (2000). Having received this rights advisement, Weston invoked his right to remain silent and to consult with an attorney. Despite this clear invocation, Stevenson then sought Weston's consent to search his marital home. Weston unequivocally objected to any search.

Following Weston's objection, Stevenson left him in her office and went to speak with Mrs. Weston. Stevenson obtained Mrs. Weston's consent to search the couple's home without informing her that her husband had refused to give his consent. Mrs. Weston testified that she thought that her husband had given his consent to the search. After Stevenson had obtained Mrs. Weston's consent, she had Weston escorted from her office

2

to the holding area of the military police station.  There

Weston used his cell phone to call an attorney friend, but the

call was observed and Stevenson took his cell phone away.

Several agents then left with Mrs. Weston and went to the

couple's marital home where they commenced the search.  Weston

was detained incommunicado in the holding area at the military

police station during this period of time.

The majority opinion finds that Georgia v. Randolph, 547

U.S. 103 (2006), does not control the outcome in this case as

Weston was not physically present at his home when he objected

to the search.  United States v. Weston, __ M.J. __ (8-10)

(C.A.A.F. 2009).  In Randolph, both the husband and wife were

present at the threshold of the home and the husband objected to

the search while his wife consented.  Randolph, 547 U.S. at 107.

The Supreme Court held that a physically present cotenant's

consent was invalid where another physically present cotenant

objected.  Id. at 120.  The decision did not address the

situation where two cotenants were asked for consent to search

while at a police station and one objected and the other

consented.  While Randolph is factually distinguishable from

this situation, it does provide some general Fourth Amendment

guidance in this area.

In analyzing cotenant consent cases after Randolph, courts

have disagreed as to whether Randolph applies only to those

3

situations where the objecting cotenant is present at the premises to be searched or whether it is equally applicable to a cotenant who has objected but is not physically present at the premises.[1] Under the circumstances of this case, that determination need not be made as Randolph contained the following exception:

> So long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection, there is practical value in the simple clarity of complementary rules, one recognizing the co-tenant's permission when there is no fellow occupant on hand, the other according dispositive weight to the fellow occupant's contrary indication when he expresses it.

Id. at 121-22.[2]

---

[1] Compare United States v. Henderson, 536 F.3d 776, 784 (7th Cir. 2008) (holding a refusal to consent by a physically present tenant can be overcome by a cotenant's consent obtained after the objecting tenant is arrested and removed from the premises), United States v. Groves, 530 F.3d 506, 511-12 (7th Cir. 2008) (holding a refusal to consent by a physically present tenant can be overcome by a cotenant's consent obtained two weeks later when the police returned at a time that they correctly believed the objecting tenant would be absent), and United States v. Hudspeth, 518 F.3d 954, 961 (8th Cir. 2008) (holding a physically present tenant's consent to search the home is valid against a prior refusal to consent, given away from the home, from a cotenant), with United States v. Murphy, 516 F.3d 1117, 1124 (9th Cir. 2008) (holding a cotenant's arrest and removal from the location does not "vitiate the objection he had already registered to the search"), and Martin v. United States, 952 A.2d 181, 188 (D.C. 2008) (holding the police are bound by a cotenant's refusal even when faced with a subsequent consenting cotenant, unless the objecting tenant makes a clear statement changing his position) (citing Murphy, 516 F.3d at 1125)).

[2] While I do not reach the issue as to whether an objection registered away from the home is vitiated by a subsequent consent by a cotenant, a compelling argument can be made that

After Weston objected to the search, officers obtained consent from his wife without informing her that her husband had just refused consent. While the officers went to the marital home and commenced the search, Weston was detained at the military police station incommunicado. During the search Weston's wife received a phone call from the lawyer whom her husband had talked to on his phone before it was taken away. She learned that her husband had not given his consent to the search and was told she could revoke her consent to the search, which she did.

The question here is whether there is "evidence that the police . . . removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection . . . ." Randolph, 547 U.S. 121. There is no question as to whether there was a "possible objection" since the police were fully

---

Randolph is based more on the stated positions of the cotenants rather than their physical proximity to the premises to be searched. The Randolph Court recognized two "complementary rules, one recognizing the cotenant's permission when there is no fellow occupant on hand, the other according dispositive weight to the fellow occupant's contrary indication when he expresses it." Randolph, 547 U.S. at 121-22. Here consent was sought from both cotenants at the police station at essentially the same time. The fellow occupants were both on hand. The police did not have to wonder whether Weston would consent because they asked him first for permission to search his home and he refused. Weston expressed his "contrary indication," and there is a compelling argument that his objection should be accorded "dispositive weight." See id.

aware that Weston had objected to the search and would not give his consent.  While Weston was not under arrest, he was detained at the military police building in the holding area and deprived of his cell phone during the period of the search.

If, as the majority holds, physical presence is required to overcome a cotenant's subsequent consent, then a situation where law enforcement officers keep an objecting cotenant from returning to his marital home where he could again voice his objection and do not allow him to communicate that objection to his spouse falls clearly within the Randolph exception.  Faced with a similar situation, the United States Court of Appeals for the Ninth Circuit held "[i]f the police cannot prevent a co-tenant from objecting to a search through arrest, surely they cannot arrest a co-tenant and then seek to ignore an objection he has already made."  Murphy, 516 F.3d at 1124-25.  In this case, Weston was not even under arrest.

While the majority opinion relies on an earlier Supreme Court case involving the issue of a cotenant's consent to search a premises, Weston, __ M.J. at __ (9) (citing Matlock, 415 U.S. 164), I do not believe that case to be controlling.  Matlock was arrested on the front lawn of the house, Matlock, 415 U.S. at 166, and placed in a nearby police car.  Id. at 179 (Douglas, J., dissenting).  The arresting officers subsequently approached the house, spoke with a resident who shared a bedroom with

6

Matlock, and received permission to search that bedroom.  Id. at 166.  The police did not ask Matlock for his consent to search the bedroom, nor did he offer it.  Id.  The Supreme Court recognized the consent of the cotenant may be valid against a cotenant who has not objected.  Id. at 170; see also Rodriguez, 497 U.S. at 179-80, 186 (holding cotenant's consent to search valid where Rodriguez, who was asleep inside the house, was not asked for his consent if police reasonably believed the consenter possessed common authority over the premises).

This case differs from Matlock and Rodriguez in at least one critical aspect -- neither Matlock nor Rodriguez were asked whether they would consent to a search.  Here Weston unequivocally objected to a search of his premises.  This distinction illustrates an important difference in this line of cases between "nonconsenting" cotenants and "objecting" cotenants.[3]

_____

[3] In Matlock the Court referred to those cotenants who had not been asked nor otherwise had informed law enforcement as to whether they consented or objected to the proposed search as "nonconsenting" cotenants.  Matlock, 415 U.S. at 170.  On the other hand, "objecting" cotenants refers to those cotenants who have voiced their objection to the search to law enforcement officers.  See Randolph, 547 U.S. at 121-22; Murphy, 516 F.3d at 1124.  The majority categorizes these distinct factual situations under the generic umbrella term "nonconsenting" and does not include Weston's refusal to consent in its reasonableness analysis.  Weston, __ M.J. at __ (11) (stating "[a]s in Matlock, Appellant was a nonconsenting party").  While the majority contends that reasonableness is a "binary proposition" where "either there is consent or there is not,"

The Supreme Court noted in <u>Randolph</u> that "'it is beyond dispute that the home is entitled to special protection as the center of the private lives of our people.'" <u>Randolph</u>, 547 U.S. at 115 (citations omitted). Given that special protection and the fact that Weston was detained by the police while his house was searched, I would find that the actions of law enforcement violated Weston's Fourth Amendment rights. However, for the reasons set out in the Chief Judge's separate opinion, I believe that the evidence would have been inevitably discovered and therefore I concur in the result.

---

<u>Id.</u> at __ (9), <u>Randolph</u> illustrates that is not always the case. The Supreme Court did not state that the factual situation in <u>Randolph</u> was the only situation where the objection of the defendant cotenant trumps another cotenant's consent. In my view, Weston's unequivocal refusal is significantly distinct from cases where the defendant was not a party to the consent inquiry. Matlock and Weston are not similarly situated defendants.

8